UNITED STATES DISTRICT   COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

*MARTINEZ / MCAILEY*

*CASE # 12CV 20325*

**ANDREA K. SILVERTHORNE**

**Plaintiff,**

Vs.

**YEAMAN ET AL**

FILED by _____ D.C.

FEB 1 1 2013

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## THIRD AMENDED COMPLAINT

ANDREA   K.   SILVERTHORNE   hereby alleges the following claims against the Defendants in the above-styled action:

This action arises under the Fourth, Ninth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. §§ 1983, 1988; 18 USC 1961-1968; 18 USC 1341the Florida Constitution, Article 1, §§§§§ 2, 9, 10, 12, 23; Florida Common Law Tort; The Fair Debt Collection Practices Act 15 USC §  1692 ( hereafter "FDCPA") ; the Florida Consumers Collection Practices act ( § 559.72) ( hereafter "FCCPA");  the Federal Trade Commission Act (15 U.S.C. §§ 41-58)( hereafter FTCA); Florida Deceptive and Unfair Trade Practices Act (§501.201 et seq); (hereafter "FDUTPA"), and the Condominium Act(§ 718)

1

SCANNED

(hereafter "Condominium Act"); as applicable in relevant years; Additionally, Plaintiff seeks declaratory relief (28 USC §§ 2201-2202) and as grounds therefore, submits as follows:

## JURISDICTION AND VENUE

Jurisdiction of this court arises under 28 U.S.C. 1331 §§§§, 1337, 1343(a) (3), and 1367(a); 42 U.S.C. §. § 1983, 1988; 15 U.S.C. § 1692, 18 U.S.C. §§§§§§ 1961-1968 and 28 U.S.C. § 2201.

Jurisdiction of this court for the pendent claims is authorized by Federal Rules of Civil Procedure, Rule 18(a), and arises under the doctrine of pendent jurisdiction as set forth in United Mine Workers v. Gibbs, 383 U.S. 715 (1966); and because of certain rights that arise from dual U.S/Canadian citizenship rights under the 1899 Treaty Between Great Britain and The United States Concerning Disposition and Tenure of Real and Personal property, Article V, acceded to by Canada in 1921.

Venue arises under FLORIDA STATUE 47 §§ .011 .051 and is proper because most of the events occurred in Miami-Dade County and six of the parties reside in Miami-Dade County.

## PARTIES

1.     Plaintiff, Andrea K. Silverthorne, ["SILVERTHORNE"]   is a natural person and a dual Canadian/ U.S. citizen currently residing at Wilson Beach, New Brunswick, Box 459 E5E 1L8. Silverthorne was a business owner of NewStar Realty and Development, Inc., DBA NewStar Realty, Inc., ["NewStar."], operating under the laws of the State of Florida and at all times material and relevant, earning capacity income.    Silverthorne is a consumer as that term is defined by 15 U.S.C. § 1692(a) (3), and Fla. Sta. §559 and used her rental income for personal

use. Silverthorne is and was a senior citizen of 60 years of age and older at all times material and relevant to this complaint.

2.      Defendant, Lincoln Place Residences, Inc., ["LPR"], is a not for profit corporation located at 1610 Lenox Avenue, Miami Beach, Miami-Dade County, Florida 33139, operating wholly under and subject to a law of the State of Florida, § 718, as it applied to her condominium at all times relevant and material to this complaint. It regularly collects debts due another using instruments of interstate commerce, such as the mail and wire (Internet). It became a debt collector under the FDCPA exception rules because it maintained control and jurisdiction over collection of a false debt <u>after</u> default 15 U.S.C. 1692(a) (6) and FCCPA 559.55(6)

3.      Defendant, Allan Yeaman ["YEAMAN"], is a natural person residing at 1610 Lenox Ave, Miami Beach, Florida, 33139 Miami-Dade County, Florida, United States of America and was a LPR Board of Directors officer and a subrogee of the LPR association in charge of the decision making, at all times relevant to the complaint; therefore, he met the definition of a debt collectors under the FDCPA and the FCCPA in the same manner and for the same reasons as LPR does

4.      Defendant, Blue Sky Miami, Inc., ["BLUE SKY"]}is a license business operating pursuant to the Laws of the State of Florida and located at 1680 Michigan Avenue, Suite-908, Miami Beach, Miami-Dade County, Florida, 33139, and was, at all times relevant and material to this complaint regularly engaged in interstate commerce utilizing mail and wire(Internet) and other means to collect debts, operating as the both the management company of LPR association and was a debt collector under the provisions of both the FDCPA and FCCPA because Blue Sky had a contract with LPR for regularly collecting only defaulted debt due another, receiving late

fees  belonging rightfully to the association, tied only to successful collection of said debt after its default. As such and then as well Blue Sky was also an unlicensed debt collector.

5.     Defendant, Business Law Group, P.A., ["BLG"] is a license business operating pursuant to the laws of the State of Florida and located at 301 Platt Street, Suite-375, Tampa, Florida, and is a law firm that operates a business that principally and regularly is engaged in defaulted debt collection, in this case on behalf of defendant LM Funding, LLC.,  and its co- debt collector , the association, using instruments of interstate commerce to facilitate the collecting of the defaulted debts owed or asserted to be due another, at all times relevant and material to this complaint.

6. Defendant, Daniel DiNicola ["DINICOLA"], is a natural person residing at 1610 Lenox Ave, Miami Beach, Miami-Dade County, Florida, United States of America and was a Lincoln Place Residences Board of Directors officer and a subrogee of the LPR association in charge of the decision making, at all times relevant to the complaint; therefore, meeting the definition of a debt collector under the FDCPA and the FCCPA in the same manner and for the same reasons as LPR does

7. Defendant, David A. Desorbo ["DESORBO"], is a natural person residing
at 1610 Lenox Ave, Miami Beach, Miami-Dade County, Florida, United States of America and was President of Lincoln Place Residences Condominium Association, an officer and a subrogee of the Association in charge of the decision making, at all times relevant to the complaint, therefore meeting the definition of a debt collectors under the FDCPA and the FCCPA in the same manner and for the same reasons as LPR does.

8.     Defendant, LM Funding, LLC, ["LM FUNDING"] is a Florida Limited Liability Company located at 320 West Kennedy Boulevard, Fourth Floor, Suite-A, Tampa, Florida 33606, and operating under the laws of the State of Florida.  At all times relevant and material to this complaint LM Funding was a debt collector, advertising: "We buy problems" LM FUNDING principally and regularly collected debts in default due another utilizing means of interstate commerce such as the mail and wire.

9. Defendant, Maxwell Scheiner, ["SCHEINER'] is the principal of Blue Sky and holds `the professional Community Association License ["CAM"] under which Blue Sky operates. He is a subrogee who made the decision to pursue Silverthorne under a separate debt collection arrangement between BLUE SKY and the LPR association; he benefited by keeping association late fees as remuneration for attempting to collect an illegitimate and unlawful debt, and therefore, he meets the FDCPA and FCCPA definition of an unlicensed debt collector in the same manner and for the same reasons BLUE SKY does.

10. **The Condominium Declaration of LPR defines the word "Act" to mean "the Florida Condominium Act (Chapter 718, Florida Statutes), as it exists on the date hereof."**

**(January 16, 2001).**

11. LPR Condominium Association's Articles of Incorporation, Declaration of Condominium, and bylaws provide for a 3-member Board of Directors governing the association, with 3 members each elected by the residential unit owners.

12. The Declaration of Condominium provisions for special assessments outside of regular monthly assessments at LPR provide in pertinent part: that, both a quorum meeting of 1/3 of the

members must be physically in attendance at a meeting where a vote is taken, and as well: a vote of the majority of its members, 50% plus one, is require at that meeting, in person or by proxy, to pass a special assessment, as so described in the LPR condominium documents. The BOARD must also prove with its notice of the proposed assessment that the needed funds for "special assessments" cannot be obtained from the regular maintenance: "should the assessments proven to be insufficient to pay the costs of operation of the condominium, or should any emergency arise, the BOARD shall have the authority to levy such additional assessment(s) as it may deem necessary, subject to obtaining the association membership's approval of such Special Assessment by majority vote at a duly called meeting of the Association at which a quorum is present."

13.     SILVERTHORNE reserves the right to add claims for any and all defendants after discovery, including but not limited to a claim of unjust enrichment, libel and slander and civil theft and to amend the complaint to sue all defendants for violation of her Canadian Charter of Rights and Freedoms as well, once the request for Declaratory Judgment on this matter is heard and resolved.

14.     At all times material and relevant to this complaint, all defendant's knowingly acted toward Silverthorne with willful intent, malice and without compliance to the laws, ordinances, customs and usage of the policy and procedures of the laws of the State of Florida and the Constitution of the United States rising to the level of fraud conspiracy to commit fraud and outrageous and unreasonable behavior, causing damages to, Silverthorne

15.     All conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution, including those set forth in  Florida Statute 718 and the filing of

four administrative complaints with the State of Florida, Department of Professional Regulations, Division of Condominiums; and the Office of Ombudsman for Condominiums.

16.     SILVERTHORNE files this civil suit alleging Eight Counts and federal and state law all in connection with violations of the Florida Condominium Act § 718, as it applied to her Declaration of Condominium.

## STATEMENT OF FACTS

17.     On or about November 2001, SILVERTHORNE purchased a 2 bedroom 1 1/2 bath condominium at LPR to live in, more specifically located at 1610 Lenox Ave, Unit 506, Miami Beach, Florida, and Miami-Dade County, Florida, 33139.

18. On or about October 2007, by reading meeting minutes, SILVERTHORNE discovered a Condominium 'Special Assessment' fees that she paid was lodged against her property at 1610 Lenox Avenue, unit 506 Miami-Dade County, Florida, 33139 without compliance to the LPR Declaration of Condominium under which Silverthorne had the right to a contractual expectation of governance. And in October of 2007, Silverthorne personally informed DESORBO in the hall outside his unit and DINICOLA[1] by the elevator on a subsequent day: They had committed a breach of the Declaration's provisions and the U.S. and Florida constitutional provisions that made this fact so; she would not pay further special assessments unless they voted properly. Silverthorne also suggested they verify her position with the State of Florida with a request for Declaratory Statement.

---

[1] Desorbo DiNicola and Silverthorne all live on the 5th floor of the building.

19. In a November 2007 conversation, DESORBO informed SILVERTHORNE as she approached her door LPRs' attorney had advised them after consultation "in writing" they should have a majority vote of the members(35) on all assessments, but the Board did not order a revote or consult with the State's Division of Condominium.

20. On February 28, 2008, BLUE SKY sent wire email transmissions bulletins to LPR members advising of and directing them to a delinquency list on the Association's web site that they could visit denoting debtors in default. The list included SILVERTHORNE without any notation of the fact it was disputed as false. Despite Silverthorne's request to eliminate her name directly to SCHEINER, the notice remained to be seen by all members of the association and BLUE SKY began a pattern of delinquency posting on the Internet as well as handing out the sheets printed from the Internet at meetings

21. Prior to this date, SILVERTHORNE had a business relationship and negotiated past contracts with each and every one of the original owners in the building, initially during the years 2000-2002, and then ongoing with frequent re-sales from 2002-2007. SILVERTHORNE had been the Broker who sold out the conversion listing and had operated an office in the building during the sell out for two years; as well, she lived in the building. Her company, NewStar, had between 40 and 80% of the yearly ongoing resale business in the building with past customer/owners until the public and erroneous postings of delinquency by Blue Sky began in February 2008. After the airing of the unlawful debt, in association meetings and on the web, by public posting, the NewStar company percentage of business dropped to 0% and remained there.

22.     In April 2008, SILVERTHORNE notified LPR's president by email after receiving dunning emails from BLUE SKY:  Blue Sky was attempting collection of her alleged obligation to pay past-due assessments; it qualified as a "debt" covered by the FDCPA and she must receive the proper contents and notification statement required on a first notice of "debt collection" required by law so she could dispute it.    SILVERTHORNE informed DESORBO and SCHEINER they were violating the FDCPA,   BLUE SKY and SCHEINER failed to provide the notice.

23.     April 2008, the officers of LPR levied an additional large assessment demanding quick payment against SILVERTHORNE's condominium, again without proper notice and voting procedures. Silverthorne subsequently, by checking the Internet web site of the association, discovered that the voting and minute meetings had changed and added to after recording. BLUE SKY promised to change them back in an email in May 2008, and never did. Nonetheless, even with the fraudulent changes the votes still did not equal a majority of the members (35). This time and every time SILVERTHORNE spoke to a BLUE SKY employee about an action she objected to as wrongful, she clarified with the employee whether or not they were order to do so by SCHEINER and she received an affirmative answer.

24. In June 2008, SILVERTHORNE initiated a complaint with the Department of Business and Professional Regulation ['DBPR"], a dispute not subject to arbitration with LPR for the need and validity of the 2007 and 2008 special assessments and proof of the need for such assessment and the inability to pay for them from regular maintenance as well as proof of proper notice and voting procedures.

25. In September 2008, defendant BLUE SKY again forwarded electronic mail correspondence referencing a known delinquency list to association members of LPR which could, they said, be located on a community website which publically informed members of which unit owners were delinquent [in debt]and paying new special assessment fees. These same lists were distributed at an association meeting that SILVERTHORNE attended shortly thereafter.[2]

26. On October 8, 2008, the Division of Condominium, despite the fact her complaint had been lodged in June much prior to October 1, 2008, advise Silverthorne that Florida Statute 718 had changed on October 1, 2008, and they no longer had jurisdiction to investigate the claim; investigation of the law for the matters Silverthorne addressed had been withdraw; the State refuse to intervene.

27. On February 11, 2009, the law firm of Cuevas & Ortiz, P.A., ["Cuevas"}sent plaintiff a written letter correspondence for a Claim of Lien on plaintiff's property together with a thirty day notice of foreclosure for the special assessment plaintiff refused to pay, accompanied by a threat of receivership on all tenant rental payments. SILVERTHORNE disputed the debt within the 30 day period allowed by law and told the law firm: receivership was not allowed under her condominium documents. She told LPR President DESORBO they were violating the FDCPA and suggested that if he were sure of his position that it be debated with a formal court suit.

28. On February 24, 2009 an email bulletin was sent to members by BLUE SKY saying the call box at LPR would be reprogrammed and that only requests from members **current** on their maintenance balances would be programmed and allowed access. SILVERTHORNE advised the

---

[2] Records were on the Internet but Silverthorne is blocked from the site and cannot get the date of the exact meetings at this time.

Board of Directors of LPR that this violated the Condominium Act. Nonetheless, a pattern of using an electronic system to lock people deemed to be delinquent in their maintenance fees, out of their homes by denying them access to the building, became, and still is, a standard practice, ordered by the LPR and the BOARD implemented by SCHEINER at BLUE SKY.

29. On March 5, 2009, the lien was filed in the public record, both prior to the 30 day expiration period of the February 11, 2009 demand letter SILVERTHORNE received and after SILVERTHORNE wrote a letter and called the Cuevas law firm to tell them she had disputed the debt and why. Cuevas stopped collection efforts, but someone filed the lien anyway and did not remove it in 90 days.

30. In March 2009, SILVERTHORNE's then tenant Diane Downs informed her they would not be exercising their option to renew at $2200 per month because a BLUE SKY employee told them SILVERTHORNE was going to be foreclosed on.  They had already rented another place. Tenancy in condominiums is only allowed through condo appraisal and the lease is submitted at that time. The association and its management company always has a copy of any lease in its entirety and knows the terms therein; There was an option for a one year renewal in the lease.

31. In April, 2009, LPR lodged a third large special assessment fee on unit owners without providing proper notice and without compliance to the condominium's declaration. SILVERTHORNE later discovered the vote was less that the numerical requirements for passage showing 15 unit owners present and 11 yes votes on the association's website under recorded and approved meeting minutes. After notifying the board, a new set of meeting minutes was posted changing and showing a deceptive number of association members being present and

votirg yes, 27, and Silverthorne was supplied with new voting records with additional votes that again were still not a majority of members (35).

32.     On or about June, 2009, Defendants DESORBO AND DINICOLA entered into a verbal agreement while standing in front of her unit--with SILVERTHORNE-- on behalf of LPR to set aside the unlawful debt, late and legal fees, including unpaid special assessments incurred due to illegal assessments, and additionally, SILVERTHORNE asked for regular monthly assessments due to SILVERTHORNE'S tenant's impromptu vacation of the property in Mar 2009, located at 1610 Lenox Ave, Unit 506, Miami Beach, Florida 33139, to be waived because a BLUE SKY employee had told Plaintiff's tenant they intended to foreclose on Silverthorne's property. In return, Silverthorne agreed not to seek legal remedies for their illegitimate collection and assessment procedures. DINICOLA and DESORBO represented that all members of the Board were in agreement. All collection efforts stopped.

33. The unit was re-rented in September of 2009 for $1700. a month to Phil Keating and regular maintenance fees resumed. The association approved the lease. This case is about illegitimate demand for SILVERTHORNE'S rent, by BLG's on behalf of LM FUNDING and LPR. All defendants knew SILVERTHORNE had a tenant, had a lease and the association had copy of it by statute. They used the new 718 provision illegitimately. On information and belief there was no vote to allow LM Funding to obtain the association's rightful benefits. BLG and LM FUNDING knew or should have known the leases contents; they knew there was a tenant in the property, else they would not have written him a letter demanding his rent.

34. In May 2010, [3]SILVERTHORNE received a letter forwarded from her Miami address to her Maine address from attorney Bruce Rogers at BLG claiming to be collecting, on behalf of LM Funding, who was LPR's assignee and LPR, a certain debt owed to LPR.  She wrote back on May 28 addressing it and a similar letter received from Michael Cordova of the same firm on the association dismissed from this suit. She corrected her address and disputed the debt explaining there was no debt due and why, saying:

> I am writing to you with regard to your letter on condominiums Lincoln Place at 1551 Michigan Ave, unit 1 and Lincoln Place Residences at 1610 Lenox Ave, unit 506, which share the same management company and similar condo documents.
>
> Yes I am disputing both debts.  I do not owe them any money; they owe me money.
>
> The condominium documents for both condominiums specify that assessments are to be done with a majority vote of the total members of the condominium, 50% plus 1 of the total number of unit owners.  All assessment were done contrary to the documents and as such are illegal.  I have that in writing from the State of Florida.
>
> I came to an agreement with first, Lincoln Place Residences Association, to resume paying my maintenance going

---

[3] NOTE: Plaintiff has the precise dates of the BLG letters at her home in Canada which she closed for the winter in October.  Plaintiff left school and came directly to Miami.



BLG did not investigate the claim. They did not address SILVERTHORNE's reasons for not owing the debt, dispute her version of events, or call it frivolous then, nor have they ever.   They resent a demand exactly as the first in June, 2010 and then: when the new version of the Condominium Act went into place July 1, 2010 they demanded Silverthorne's tenant's rent directly without copying her.

35.     On July 14, 2010, when SILVERTHORNE received notice via email from BLUESKY sending her and her tenant a copy of a letter from BLG to the other condominium that has been released from this suit, she contacted BLUE SKY employee Luis by email to learn that an identical letter had been sent to her tenant at LPR . Silverthorne disputed the debt to BLUE SKY by email SILVERTHORNE notified her tenant to expect it and call when it was received. SILVERTHORNE verified with Luis in an email that SCHEINER instructed him to do it.

36. On July 19, 2010 SILVERTHORNE received an email from her tenant stating that he had received a notice of attempted delivery from BLG. When it was delivered, defendant BLG, tenant called to say: on behalf of LM FUNDING and LPR, BLG had demanded rent from the tenant on Silverthorne's property located at 1610 Lenox Ave unit 506, Miami Beach, Florida, 33139. The letter demanded payment of his rent to LPR, it said, because SILVERTHORNE had a delinquent debt; it cited the new July 1, 2010 law as its legal authority to do so. No copy of the letter was sent to SILVERTHORNE. Her tenant also said there had been a story in the *Miami Herald* about the new law. SILVERTHORNE sent an email to the DBPR (Department of Business and Professional Regulation) the next day about the story:

> "I received a call from my tenant. Apparently there was a story in the *Miami Herald* about new amendments 2010-174 to existing laws that went through on July 1, 2010 The Herald said everyone is interpreting them as new and overriding existing condo documents governance. In the specific they said every association is sending out letters to the tenants of delinquent owners whether there is a contest of lien going on or not and telling them to fork over their rent immediately. I went to your site and read 2010-174 and the law about receivership is not new. It was there before to the best of my knowledge and recollection, and was enacted sometime back after 2003. **Last year**, I wrote the DBPR to tell them my condo documents were recorded in 2000 and do not permit receivership and asked them if their new law overruled them, and I was told the new law did not overrule existing governing documents and the association would have to wait until the contest of lien was settled to demand rent from the tenant. The Herald Article said your new law was "murky," only applicable under certain conditions, and might have to go to court. It does not look to me as there has been any change since it was first enacted and the grandfather premise has always been applicable . . ."
>
> "I do have in writing from your agency's office in Ft Lauderdale a reply from about 18 months ago that new laws from your agency have never, repeat never applied retroactively to existing condominium documents and do not override them. There is an older story in the Miami Herald from about 18 months ago that quotes the State in this regard. If you purchased a condominium in good faith assuming you would be governed by the laws contained in the State's approved documents, you cannot be governed otherwise, including by the state, until the democratic body of your own association says otherwise. I see a great havoc that could come to the state over just this one story."

Irene Stadler of the DBPR answered the email saying "In response to your question concerning grandfathering applications, Chapter 718, F.S., does not specifically address this issue." No law of the State of Florida does, nor does any other law in the nation; it's a provision of the US and Florida Constitutions. There were many subsequent stories about the rent grabbing enterprises in the State of Florida. The State of Florida under Governor Charlie Christ remained silent and never made a statement to the South Florida press with regard to the unconstitutionality of the practice to the best of SILLVERTHORNE's knowledge and information.

37. On July 21, 2010, SILVERTHORNE wrote to BLG and emailed DESORBO. She stated that the debt had been settled because it never legally existed and reminded both that they were violating the FDCPA. Desorbo acknowledged in a written email that there was a deal in place, stating: "Because we have an agreement with you we will honor it." BLG was so informed, he said.

38. In this email DESORBO also stated that a notice of a new small assessment had gone out. Silverthorne never received it and realized by checking the site that at some point she had been blocked from the community web site; her codes did not give access and she had not been communicated with on community notices. SILVERTHORNE again decided not to pursue FDCPA violations only because the agreement had been reinstated

39. Despite this, BLG continued collection efforts at LPR with dunning letters to Silverthorne and her tenant, received on August 1, 2010, and Silverthorne emailed DESORBO about them.

40 On August 4, 2010, DESORBO replied; "[P]lease ignore the letters. And inform your tenant, if he needs to talk to me he can knock on my door any evening and [I] can explain the situation, I will also inform the attorneys again......" Collections by BLG did cease, BLYE SKY and SCHEINER continued to dun SILVERTHORNE without the required collection notice until a last email effort on August 19, 2010. BLUE SKY has at all times collected in tandem with BLG. SILVERTHORNE again did not seek legal remedy for FDCPA and other violations because of the reinstatement of the "agreement."

41. On December 29, 2011, after abatement in collections by all defendants, the agreement was breached yet again when SILVERTHORNE received an email from her tenant stating: "Guess what Andrea? BLUE SKY won't schedule me an appointment so that I can walk in and trade the keys for 2 FOB devices because there's a HOLD on your unit. To access the building (1610 Lenox). I will need that FOB device effective JANUARY 17, 2011."

42. On December 29, 2011 SILVERTHORNE emailed DESORBO and copied her tenant: "That is an error I will forward this message to DAVID DESORBO. David will you please call BLUE SKY and let them know that you have reinstated the deal and that the hold should be removed Also what they are doing irrespective of whether or not there was or was not a deal it is not legal according to Florida law for anyone. Access cannot be denied. Please advise both of us when this is accomplished and Happy Holidays. Also, Phil, he lives next door to you in 507. Sometimes he goes away for the holidays but if you see his light on you could knock. Andrea Silverthorne 506."

43. On January 5, 2011, SILVERTHORNE received an email from her tenant "This greeted me as I came home. It's legal notice to pay my rent to the Assoc. Haven't heard from neighbor about

FOB " The "this" the tenant spoke of was a letter from BLG, this time posted open faced on the door of unit 506. The tenant took a picture of it and emailed it to SILVERTHORNE.

44.   SILVERTHORNE emailed back: "I spoke to David Desorbo this morning and he is saying that I have to talk to the other board members because they have again changed their mind. This according to my attorney is no[t] legal. They cannot change a decision already made. And yes one thing has nothing to do with another; it is illegal to deny you access you have nothing to do with the problem; in fact it would be illegal to deny me access to my apartment.

45. SILVERTHORNE received an email from SCHEINER on January 6th, 2011

> " Hi Andrea.  As you are aware, FS718 was amended not that long ago to enable a community to make a demand of rents for a unit which is delinquent. Your tenant has been given the required notice as prepared by the community's attorney. Because the only recent payments of your monthly maintenance fee will not begin to retire the many thousands of dollars in delinquent assessments that you owe, the community requires the payment of all the indebted amounts by you. The Board finds it grossly unfair for you to derive rental income whilst you do not address the past due delinquent amounts. Because we have yet to receive rents from your tenant, <u>counsel has been authorized</u> to proceed with an expedited eviction which should be completed within three weeks. Please cease in harassing David Desorbo as he alone does not render decisions affecting the community. **I've copied your tenant on this email so that this individual is prepared for what will soon affect him. "**(Emphasis added).  Regards, Maxwell "

SCHEINER is a licensed CAM trained by the State of Florida's approved text book.

SILVERTHORNE held a CAM license once; she had the same text book; you are trained by the State approved text book to adhere to the document's provisions and changes to 718 do not apply to existing condominiums unless amended by a vote of the members as prescribed by the documents. In an effort to retain her rent, SILVERTHORNE sent Keating an email on January 5, 2011, saying she had spoken to and confirmed with a

license State of Florida CAM instructor that the July 1, 2010 law did not apply to existing condominiums.

46. SILVERTHORNE also received this email from DESORBO on January 6, 2011; "I am no longer involved in this. Please e mail Danny, Allan or Maxwell. Sent from my iPhone. Silverthorne emailed Desorbo back if he was still an officer he could not be not involved.

47. On January 7, 2011 SILVERTHORNE received an email from YEMAN stating: 'All communication between you and the board should be made through me. David is not to be contacted.   During the next three months SILVERTHORNE sent YEMAN three emails; he did not answer any of them.

48. On January 10, 2011, Silverthorne received an email from her tenant: "I'm giving this to Blue Sky Property Management manana, as this is apparently the only way they'll give me the new FOB so as to access your apartment." "This" referred to an attachment of a check paid to LPR for 1700 dollars. Tenant emailed that day a copy of the check on receipt signed by a BLUE SKY employee, utilizing a copy of a note by SCHEINER to the employee stating that the fobs were to be **turned off** again in 30 days if the tenant did not pay LPR rent again. Tenant also stated in his email the letter from BLG looked like a legal document to him and he had no choice but to comply with the demand and he paid rent to the association; as well he vacated early on February 4, 2011; he was due to stay until March 15, 2011.  SILVERTHORNE had entered an agreement with Keating in July 2010 that if he was bothered again, he could live there for fee until it was resolved; therefore, Keating paid money he did not owe.

49. On January 11, 2011 Silverthorne received the following message from the Division of

Concominiums:

"Section 718.501(1), F.S., states, in part, "The Division of Florida Condominiums, Timeshares, and Mobile Homes of the Department of Business and Professional Regulation, referred to as the "division" in this part, has the power to enforce and ensure compliance with the provisions of this chapter and rules relating to the development, construction, sale, lease, ownership, operation, and management of residential condominium units. In performing its duties, the division has complete jurisdiction to investigate complaints and enforce compliance with the provisions of this chapter with respect to associations that are still under developer control and complaints against developers involving improper turnover or failure to turnover, pursuant to s.718.301. However, after turnover has occurred, the division shall only have jurisdiction to investigate complaints related to financial issues, elections, and unit owner access to association records pursuant to s. 718.111(12). . . I have forwarded your email to the Division for handling. I trust you will find this information helpful. Again, thank you for writing.

SILVERTHORNE would later learn her complaint had been dismissed for "lack of jurisdiction" and that it was part of the changes made to the law on October 1, 2008 at the height of the foreclosure crisis. Investigate is not to be confused with enforce; it is only the power to investigate that was removed by changes to the law on October 1, 2008. Full enforcement is and always was an option of the State.

49. On Jan. 25 2011, SILVERTHORNE again complained to the DBPR, this time about the lock out from common elements use to access her unit, by sending an email.

50. Because she had no way to pay the regular maintenance and her tuition without revenue and she did not yet have the case law now present saying associations must settle all set off claims even against regular monthly maintenance before placing liens, SILVERTHORNE feared the association would use the lock out and refusal to allow rental to run up a regular maintenance debt, and she listed the apartment, telling the agent to tell the association she would allow them

to retain rent until she could return to the U.S. and seek legal remedy to settle the matter. They

agent reported back by email they would agree to this arrangement.

51. On January 27, 2011 Chris Olsen, ["Olsen"]the Division's Ombudsman, contacted

SILVERTHORNE and said the matter of lock out from the building and parking lot had been

referred to him by the Division of Condominiums and that they were going to send them an

education letter with regard to the illegality of using an electronic system to lock people out of

access to their homes; they were violating the Condominium Act 718.103, 106 and 303, he said.

SILVERTHORNE sent an email to Olson disagreeing with the tactic of an education letter as

follows:

> It is clear that the association has violate 718 in a major not a minor
> way, locking people out of their homes by denying access to the building.
> While I understand that rules changed so that there are only certain provisions
> that you may begin a physical investigation on, the entire statute is within
> your jurisdiction to enforce, and I am asking you to enforce it. An
> investigation is not necessary. You have the fact in black and white in the
> written document the management company gave my tenant.[4] It clearly states
> they are withholding the keys for money and threatening to turn off the keys if
> my tenant does not pay them money again on February 15th. An education
> letter does not suffice in this circumstance. I understand that criminal activity
> is not with in your jurisdiction either.

Olson refused to enforce the State's law and sent yet another education letter to the association;

it told them they were violating the 718 law and gave them the section; however, it also stated

they had  no jurisdiction to investigate it (They were taking no action against the association.)

---

[4] A copy of an email from Scheiner to his employee in response to the employee's request for authorization to give
the fobs to the tenant stating it was OK to give them to him and to turn them off again if he did not receive rent on
February 15, 2011.

52.  On or about February 15, 2011 LPR turned off the fobs device for SILVERTHORNE's property location prohibiting SILVERTHORNE's access to her property and deactivated her code for the garage door opener. [5] LPR did agreed after the education letter was received from the State to give SILVERTHORNE's agent the fobs left with them by the vacating tenant and turn them on so that the agent could show the unit. At SILVERTHORNE'S request, her agent negotiated an agreement that would allow lease if Silverthorne allowed them to collect the rent temporarily until she could finish her school semester and return to Florida to file suit; she was in school in Canada in the middle of arduous assignments and could not pursue remedy at the time.

53.  After a new tenant was secured, on April 14, 2011, LPR sent SILVERTHORNE an agreement and she altered the agreement as had been previously agreed to, allowing them to temporarily keep the money and crossing out a sentence that said she was admitting to the debt. She specifically denied the debt, as agreed in advance by LPR. LPR reneged and refused to approve tenancy of SILVERTHORNE's tenant without a personal admission of the debt to the association and the fobs were turned off again. In April, 2011, SILVERTHORNE received an email from DESORBO asking her to admit to the debt and that they would refund her money later. SILVERTHORNE refused to admit to the debt. This was the third renegotiated breach of the agreement. BLUE SKY refused to return the new tenant's 100 application fee.

54. LM FUNDING's and BLG's continued overt acts of reinitiated unlawful collection activity during this period of a third breach of the agreement were a lien filed, without notice to

---

[5] Wireless transmitters that operate the property unit entrance, or garage gates. Clicking the garage opener opens the gates to the garage area; presenting a fob close to the reader location at each door or elevator cab operates all other doors. Each used of the fob access device is controlled/monitored by a computer.

Silverthorne against the property on March 7, 2011 and a collection letter in April 2011 just after she secured a tenant that the Board would not approve. As well BLG filed a lien in spite of a contest over the debt the next year in March of 2012, without notice to SILVERTHORNE (BLG has SILVERTHORNE'S address and she gets all their collection letters. SILVERTHORNE discovered BLG had also filed one in February 2010, before they ever contacted Silverthorne about the debt; none of them were removed in 90 days as required by the Condominium Act.

55. On May 6, 2011, SILVERTHORNE filed a complaint with the state's financial regulatory agency in Tallahassee and **copied LPR, BLUE SKY and BLG by email on May 7, 2011. REPEAT: Silverthorne copied the Defendants by email attachment.** This compliant contained **all of the Florida case law** on **the non-retroactive character of new versions of the Condominium Act on old Condominium Declarations. REPEAT: The Defendants received all the case law demonstrating that Silverthorne had no debt when assessments were done without a vote of the majority of the members; new provisions did not apply to old condominium documents.**[6]LPR still did not let SILVERTHORNE rent the apartment without admitting to the debt, nor did they seek a declaratory judgment from the state after Silverthorne suggested it for the second time. The agency referred the matter to the Florida Bar and the Condominium Division in June of 2011 because SILVERTHORNE failed to mention LM FUNDING. The Division again closed their case saying again they had no jurisdiction to investigate, emailing Silverthorne on October 28, 2011: "Complaint #2011043616 was received

———————————————

[6] Silverthorne has the voting records of the assessment votes taken prior to the time that they began assessing without a vote at all, allegedly they said because the law changed and they claimed the new law applied and LPR knows Silverthorne has the records.

by the Division of Condominiums, Timeshares and Mobile Homes on 9/1/2011, closed--no jurisdiction." The Florida Bar also refused to investigate.

56. In October of 2011, due to financial difficulty, that SILVERTHORNE would not have had, had she had her income from the apartment, and she had to drop out of school for a semester. The loss of income is forcing her to take four years instead of two to complete her degree and return to the work force.

57. In November 2011, because LPR had caused to be filed foreclosure liens against SILVERTHORNE's properties in March of 2010 and March 2011, without proper notice or service and without proceeding to file a foreclosure action within the 90 days required by the Condominium Act, SILVERTHORNE requested by letter the liens be removed for lack of due process and service, and informed LPR that she was going to move into the unit as soon as she could rent her other residence and would begin paying maintenance as soon as the fobs were turned on and access granted. BLUE SKY replied they would turn on the fobs- but did not. Silverthorne verified that this was done under the orders of SCHEINER

58. In November, 2011, SILVERTHORNE again visited the Office of the Department of Business and Professional Regulation's Division of Condominium's Ombudsman's office in Ft Lauderdale, to ask for their help in turning on the fobs for entrance to the condominium. Mr. Chris Olson, [Olson"] the Ombudsman agreed to open another case and send yet another education letter advising LPR that they were violating the Condominium Act. SILVERTHORNE again requested enforcement rather than education as it was a thrice repeat offense He advised SILVERTHORNE that lock out from one's home entrance had not been put on the list of major

violations that was under the jurisdiction of the department to be investigated. The fobs were still not turned on.

59. On November 1, 2011 SILVERTHORNE received an email from BLUE SKY saying that they had turned on the fobs but they would be repeatedly turned off every 30days. They did not activate the fobs until SILVERTHORNE paid them a visit and when she objected to the every 30 day turn off and said she could not live there under those circumstances and wrote a letter to that effect. She was told by a BLUE SKY employee the provision was now in the Bylaws to do so. Silverthorne advised it was an illegal provision; there had never been a vote she knows of and asked for a copy of the Bylaws. BLUE SKY employees refused and told SILVERTHORNE that she had to write a letter requesting them.

60.    On December 12, 2011, SILVERTHORNE submitted a written request for a copy of the new condominium by-laws which allowed defendant to deactivate the fob device for 30 day periods, a violation of the Condominium Act. New bylaws if they do exist have not been provided. Silverthorne was sent a copy of her unchanged documents. The same time, she also visited Olson in Ft Lauderdale about the problem and he agreed to open yet another case.

61. On December 13, 2011 the fobs were finally turned on.

62.    On December 20, 2011 SILVERTHORNE wrote Olson, Condominium Ombudsman, the following email about the threat to turn the fob off every 30 days:

> Hi Chris. I am writing you for two reasons.
>
> I am sending you a copy of my complaint to the States Financial Services Division so that you can see all the case law. No new law applies to old condo documents ever, unless they are amended in accordance with their

guidelines for amendment that are in place. You may read them at your leisure, but I think it would give you more empathy for the unit member than for the Association, which is the State's current bent.

You had said that you were opening a case and sending Lincoln Place Residences a letter c/o Blue Sky. I would like you to scan an email me a copy of that letter.

And you said that you would speak to them on the phone. I would like a synopsis of that conversation and when it took place.

I now after weeks of requests finally have activated fobs; however, they are threatening to deactivate them in thirty days, if I do not pay my disputed debt.

I would like you to read the beginning of the complaint right away because it starts with my email to you last time about enforcement of major issues that is within your realm. And this is the third time now that the DBPR has warned the association that they are violating 718 with regard to the lock out from common elements.

I would like you to get in writing assurances from the Lincoln Place Residences Association that they will not turn my knob off in 30 days, and if they will not give that to you, I think you owe me enforcement procedures or an explanation why lock out from your home is not a major violation. calling for them and allowed by your laws and jurisdiction.

Thanks for all your help but I need you to help me tidy up loose ends.

Happy Holidays I hope to hear from you soon.


Best regards,


Andrea Silverthorne


63 Olson still refused to enforce the State law, choosing to write yet another education letter

SILVERTHORNE's daughter died on Christmas Eve of 2011; her memorial was Jan. 5, 2012;

the suit's filing already in preparation at that time was delayed until January 27, 2012.

64. On January 13, 2012 the fobs for LPR were turned off. Silverthorne wrote LPR a letter stating she could not move in until assurances from the Board were received that her fob would stay on; she returned to Canada and school in June of 2012.

65. Silverthorne has been and still is deleted from the Condominium mailing list and common web site for four years and therefore reserves the right to add additional facts after discovery. She has learned from a fellow owner that the association has had two more assessments in 2012 which SILVERTHORNE was not noticed on and both were done without a vote at all, in continuing blatant defiance of the provisions of LPR's documents, deceiving owners. The harassment of SILVERTHORNE continues: she is still denied access to the web site; cannot order fobs; still has no access to the building; cannot rent; and has not been sent new stickers needed to park without the threat of towing. On February 7, 2013, in response to her many requests reminding them they were denying her rental and to get new stickers for her car and access to the site so she could order fobs, she received an email from BLUE SKY stating that they will not allow her access to the garage and her home because she has a debt.

66.. SILVERTHORNE's damages result from violations of federal and state laws, but are not limited to, general damages as provided under Florida law, trebled where applicable because she was and is a senior citizen over the age of 60 as well as special damages associated with SILVERTHORNE's inability to meet her monthly expenses, pay tuition for her journalism schooling, buy needed medicine and the resulting losses and effects. Such damages were foreseeable by the defendants. In SILVERTHORNE's case, her monthly expenses include her home in Florida and Canada and her tuition to St Thomas University in Fredericton, New Brunswick, Canada medicine, food and transportation. SILVERTHORNE has to drop out of

school every other semester; she was a better than A student, pursuing a dual major in journalism and environmental studies, thus delaying her entry to the work place now by more than two years. SILVERTHORNE's damages result from lost rents and the fact: after the first public publishing of her disputed debts to the members of the association her real estate company, NewStar Realty, Inc. never received another listing contract from building owners. SILVERTHORNE was the broker who handled the conversion sell out of the buildings and had a regular income stream from identifiable, repeat and referral business from this source.

## COUNT I

## VIOLATION OF THE FDCPA AGAINST LM FUNDING

67. Plaintiff repeats and re-alleges and incorporates by reference the allegations in paragraphs 1-66 with the same force and effect as herein set forth and further alleges.

68. LM FUNDING as an assignee of defaulted debt meets 15 USC 1692(6) (a) definition of a "debt collector," and they were aware or should have been aware of all the facts contained in paragraphs 1-66 on the history of the settled dispute with Silverthorne and the Association prior to their retention. LM FUNDING knew or should have known the contents of Silverthorne's lease; LPR had a copy, and the condominium documents of LPR Maintenance fees and special assessments –when owed--meet the definition of a debt. In the entire course of their action, with continuing violations and  an on-going accrual and pattern of episodes, running from March 2010 to at least March 2012, LM FUNDING overtly, knowingly, repeatedly, intentionally, willfully, maliciously violated provisions of the FDCPA, utilizing BLG as their collection agent, rising to the level of  civil theft, fraud and conspiracy to commit fraud, as well as employing and

directing BLG's outrageous actions and behavior that they knew or should have known to be unlawful in the following manner:

i. 15 USC 1692 (e): Used a false, deceptive, or misleading representation or means in connection with the collection of a debt : Alleging an unlawful debt and saying the July 1, 2010 revisions to the Condominium Act gave them the right to demand tenant's rent and evict him if he didn't pay.

ii. 15 USC 1692 (2) (a) and (b) The false representation of: the character, amount, or legal status of any debt, and the compensation which may be lawfully received by any debt collector for the collection of a debt, an as yet unknown portion of her tenant's rent, and by representing to the third party tenant: SILVERTHORNE had a debt, when they knew or should have known there was no debt and by omitting to tell the tenant the unlawful debt was disputed and by representing they had lawful right to be compensated by SILVERTHORNE's rightful rent.

iii. 15 USC 1692 (4): The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action: They unlawfully ordered the demanding of SILVERTHORNE's lawful rent and represented to the tenant it was lawful to do so and threaten him with bodily eviction if he did not pay.

iv. 15 USC 1692(5): The threat to take any action that cannot legally be taken or that is not intended to be taken.

LM Funding demanded rent they had no right to and the also threaten foreclosure lien by filing a lien that was disputed with no notice to SILVERTHORNE but did not further, ever, demonstrate intention of filing a foreclosure and going to court.

v. 15 USC 1692 (7): The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer. LM FUNDING represented through letters written by BLG SILVERTHORNE as a debtor when she was not.

vi. 15 USC 1692(8):Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. LM FUNDING directed communication with SILVERTHORNE's tenant and then broadcasted the debt to the building when they cause to be posted an open face letter on her door.

vii. 15 USC 1692(10):LM FUNDING used false representations or deceptive means to collect or attempt to collect a debt: LM FUNDING violated this section and its subsection denoted above specifically: by causing a foreclosure lien to be repeatedly placed on SILVERTHORNE's property without due process with no intent to foreclose on the property; representing and communicating an unlawful debt to third parties, SILVERTHORNE's tenant and the residents of LPR, first by causing a letter to be written and then by posting or causing to be posted open faced on SILVERTHORNE's door letters that represented SILVERTHORNE had a debt to the association without properly investigating it; disclosing the fact SILVERTHORNE disputed it by claim she had been absolved of the debt by the association; it was originally unlawful; and by representing that a law of the State of Florida gave them legal authority to demand the rightful

rent derived from SILVERTHORNE's property when they knew or should have known the representations to be false. And finally: by participating in the threat and actual lock out of SILVERTHORNE and her tenant from the property.

vii. 15 USC 1692c (b) LM FUNDING had no prior consent when they directed communication with SILVERTHORNE's tenant and no legal right to do so with use of the new law 718.116(11) that did not apply to her, and they did so first after she had in writing disputed the debt and then repeatedly after she had disputed the fact that not only did she have no debt but that the rent appropriation law did not apply to her and without properly investigating her complaint.

viii 15 USC 1692d (1). Engaged in conduct the natural consequence of which was to harass, oppress, and abuse SILVERTHORNE in connection with the collection of a debt they knew to be unlawful by the use of illegitimate means to harm the property of SILVERTHORNE in violation of  specifically by employing BLG to wrongfully expropriate tenant's rent, SILVERTHORNE's rightful property, when they knew they had no right to it, amounting to theft of SILVERTHORNE'S's rent.

ix. 15USC 1692f (1) and (6) (a), (b), and (c). **(1),** LM FUNDING  bilaterally , with LPR, by  an agreement whose full contents are not yet discovered, directed the use of unfair practices and unconscionable means to collect a debt by employing BLG for the collection of an amount not expressly authorized by the agreement (Declaration of Condominium), nor permitted by law, and by taking or threatening to take any non-judicial action to effect disablement or disposition of

property **because** the law they cited as authorization did not apply to SILVERTHORNE and they knew it did not. [7]

x 15 USC 1692 (g)(b)   SILVERTHORNE disputed both the nature  and amount of  debt  as well as LM FUNDINGS's ability to use new provisions of the Condominium Act as a collection tool, and they failed to properly and reasonably investigate the claim and continued collection efforts.

69.  SILVERTHORNE has suffered actual, general and specific damages as a result of the LM FUNDINGS's violations of the FDCPA. Defendant's violations of the act proximately caused these losses, which defendant knew or should have known would be the invariable result of its actions. DEFENDANT's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior and they conspired with others to do so.

70. *Wherefore* , SILVERTHORNE requests  this court to enter judgment in her favor and seeks actual, general, statutory and special damages from  defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT 11

### VIOLATION OF THE FCCPA AGAINST LM FUNDING

71. SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 with the same force and effect as herein set forth and further alleges:

---

[7] Had the law applied LM FUNDING still had no standing to demand Silverthorne's rent. and interfere as a landlord only the association did.

72. L.M. FUNDING knew or should have known the contents of Silverthorne lease and her condo documents and that their actions violated them and therefore violated FLORIDA STATUTE 559.72(3) and (6), when their collector BLG repeatedly told Silverthorne, after she disputed the debt, that they would disclose to SILVERTHORNE's tenants orally or in writing directly or indirectly information affecting the debtor's reputation for credit worthiness without also informing the debtor that the existence of the dispute would also be disclosed.

73. LM FUNDING violated FLORIDA STATUTE 559.72(7) by willfully and repeatedly directing and ordering BLG's continued communication with the debtor and her tenants with such frequency as can be reasonably expected to harass the debtor or her tenants and they fully engaged in other conduct which can reasonably be expected to abuse and or harass the debtor or her tenants as follows:

(a) Caused to be communicating in writing to SILVERTHORNE and her tenant the demand to pay LPR rent or face tenant eviction.

(b) Conspired to lock tenant and SILVERTHORNE out her property.

74. LM FUNDING violated FLORIDA STATUTE 559.72 (5) by causing to be disclose to SILVERTHORNE's tenants and anyone passing by her unit's doorways a disputed debt that was under agreement to be set aside effecting her reputation as an individual and a Realtor.

75. LM FUNDING caused to be disclosed by BLG information concerning the existence of a debt, known to be reasonably disputed by the debtor, without disclosing the fact, thereby violating FLORIDA STAUTE 559.72 (6).

76. LM FUNDING employed BLG to repeatedly claim, repeatedly and repeatedly attempt and threatened to enforce a debt and then did enforce a unlawful debt by demanding her tenant's rent for LPR, which they benefited from, when they knew or should have known, first by investigation and then after SILVERTHORNE told them that the debt was not legitimate and that no the legal right to seize tenants rent existed for SILVERTHORNE's condominium in violation of FLORIDA STATUTE 559.72(9).

77. SILVERTHORNE has suffered actual, general and specific damages as a result of the LM FUNDINGS's violations of the FCCPA. Defendant's violations of the act proximately caused these losses, which defendants knew or should have known would be the invariable result of their actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior and they conspired with others to do so.

78. *Wherefore*, SILVERTHORNE requests this court to enter judgment in her favor and seeks actual, general, statutory and special damages from defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

**COUNT III**

**VIOLATION OF THE FTCA BY LM FUNDING**

79. SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 with the same force and effect as herein set forth and further alleges:

80. Section 814 of the FDCPA, 15 USC 1692 l states: " For purpose of the exercise by the Commission of its functions and powers under the Federal Trade Commission Act [15 U.S.C. 41

et sec.], a violation of this subchapter shall be deemed an unfair or deceptive act or practice in violation of that Act, " and further states: "All of the functions and powers of the Commission under the Federal Trade Commission Act are available to the Commission to enforce compliance by any person with this subchapter, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests in the Federal Trade Commission Act, including the power to enforce the provisions of this subchapter in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule. The court has the power to enforce the provisions of the FDCPA in the same manner as if the violation had been a violation of the Federal Trade Commission trade regulation rule; therefore any violation of the FDCPA "shall be deemed an unfair or deceptive act or practice in violation of that act.15 USC 1692/ § 814 (a).

81. LM FUNDING knew or should have known the content of Silverthorne's condominium documents and lease and therefore the fact the new version of the 718 law did not apply ,and with intent, through the use of commerce in an immoral, unethical, oppressive, unscrupulous way engaged in an inequitable and illegitimate assertion and use of its clients LPR power of governance, by utilizing a contractual agreement between the two, to mislead SILVERTHORNE's tenant and deceived him into believing that their letter was a legitimate and legal demand for his rent supported by Florida law and that he must surrender his rent to LPR on their behalf. Had SILVERTHORNE not been an expert in condominium law application to members of the association it would have, and it did deceive, many Floridians into believing their rightful rent could be taken, effecting commerce all over the State of Florida. These unfair and deceptive acts caused substantial damages to SILVERTHORNE and many others, including loss of income, foreclosure of their property and income that would give them the ability to

renegotiate their mortgage.  Its misrepresentation was material and it was reasonable for the tenant and most owners to believe the machinations because they quoted a state law; they used the authority of the State.

82. SILVERTHORNE lost the use of her property and the rapid appreciation of rents that occurred during the depravation of her rightful rent. LM FUNDING sold its services to undertake the illegal actions to LPR with mutual knowledge and consent and conspired with others to do so.   The scenario tenant was faced with had the tendency, capacity and likelihood to deceive, was unfair and therefore violated Section 5 of the FTCA 15 USC 45 9a) (1). Any and all violations of the FDCPA is equally a violation of the FTCA according to the administrative of the law Section 814 of the FDCPA, 15 USC 1692 l

83. SILVERTHORNE has suffered actual, general and specific damages as a result of the LM Funding's violations of the FTCA.  Defendant's violations of the act proximately caused these losses, which defendant knew or should have known would be the invariable result of their actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior and they conspired with other to do so.

84. *Wherefore* , Silverthorne requests  this court to enter judgment in her favor and seeks actual, general, statutory and special damages from  defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT IV

## VIOLATION OF THE FDUTPA BY LM FUNDING

85. SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 as well as paragraph 80-84 with the same force and effect as herein set forth and further alleges:

86. LM FUNDING knew or should have known the content of Silverthorne's condominium documents and lease and the fact their method of collection was not lawful for the condominium in question.  Violations of the FTCA constitute per se violations of the FDUTPA F.S. §501.201, per § 501.204, unlawful acts and practices, and if they occur in more than one circuit court area which this did, regulatory authority is the Attorney General of Florida.

87. SILVERTHORNE is a senior citizen as defined by the statute and has suffered actual, general and specific damages as a result of the LM FUNDINGS's violations of the FDUTPA. Defendant's' violations of the act proximately caused these losses, which defendant knew or should have known would be the invariable result of their actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior and they conspired with others to do so

88. *Wherefore*, SILVERTHORNE requests this court to enter judgment in her favor and then refer the matter to the Florida Attorney General; SILVERTHORNE seeks actual, general, statutory and special damages trebled, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status (under §57.105, FLORIDA STATUTES, as applicable, and any other relief this Court deems just and proper.

## COUNT V

**VIOLATION OF SILVERTHORNE'S CIVIL RIGHTS PROVIDED BY THE US. CONSITUTION'S FOUTH, FOURTEENTH AND NINETH AMENDMENT UNDER COLOR OF LAW PURSUANT TO 42 USC 1983, 1988  AND THEREFORE, THE FLORIDA CONSTITUTIONARTICLE I SECTION 2, 9, 10,12 AND 23 BY LM FUNDING**

89. SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 with the same force and effect as herein set forth and further alleges:

90. Defendant L.M. FUNDING knew  the history of the dispute; the debt was unlawful; the method of their collection was unlawful, including locking tenant and SILVERTHORNE out of the building and LM Funding knew or should have known the content of SILVERTHORNE's condominium documents and lease; they are in the possession of the association; therefore, by employing BLG to implement collections for them as LPR's assignee against SILVERTHORNE it:

i.) caused to be publicized in a wide spread manner, as it pertain to her neighborhood, the building, on more than one occasion, a matter concerning the private life of SILVERTHORNE to a third party, her tenant and the visitors, owners and tenants living in LPR, and therefore, any others they transmitted knowledge of the content of the letter to, a letter which knowing used a false representation that SILVERTHORNE had a debt without mentioning a dispute.

ii) falsely represented that they had the right to collect it for LPR by demanding her tenant's rent when they knew no such remedy existed in the law and the debt was unlawful because the special assessments were done unlawfully, and they should have known LPR had therefore

agreed with SILVERTHORNE there was no debt when they began collection; they surely knew after SILVERTHORNE wrote them.  Additionally, they knew the rent demand authorized by the new section 718. 116 provision of the Condominium Act did not apply to existing condominiums.

iii) its actions  caused and extended to the lock out of a third party tenant-- and even SILVERTHORNE herself -- in order to effectuate the delivery of the proceeds of the tenant's rent and deprive her of liberty, due process and rights to her property  and its  income

91. These actions presented SILVERTHORNE in a false light to her tenant and neighbors and visitors to her building which any reasonable person would find offensive and unreasonable. The dispute was not a matter of legitimate concern to the public including the residents, owners, tenants and visitors that passed by SILVERTHORNE's door or received knowledge of the posting from others, because it was an unlawful action: the seizure of SILVERTHORNE rightful use of her property and therefore of no concern to them.

92. SILVERTHORNE suffered damages as a direct result of the letters mailed and posted open faced on her door from  BSM and by losing rent that rightfully belong to her, the ability to pay regular maintenance, maintain her personal expenses, embarrassment, loss of reputation and potential professional real estate income and being unable to continuously pursue her education in a timely fashion. LM FUNDING caused the posting of the notice on the door and its initial mailing to the tenant.

91. The State of Florida was in general made aware of the widespread, statewide misuse of a new provision of the state's Condominium Act by major Florida media stories, and in

SILVERTHORNE's case was made specifically and directly aware of the deprivation of her rights by her -no less than four - complaints to the state's Division of Condominiums and one to its Financial Regulatory Division, submitted twice, once for BLG and BLUE SKY and once for LM FUNDING. All of the State's decisions not to enforce were sent to the Association as well as SILVERTHORNE.  The State took no enforcement action at all, and other measures to 'educate" the association of wrongdoing, when they already knew they were doing wrong, while simultaneously telling LPR they did not intend to do anything about their conduct, was demonstrably inadequate, an inappropriate action and the proximate cause of the clear, on-going depravation of SILVERTHORNE's civil rights, leaving her insecure in her property and robbing her of her rightful due process and property rights.

92. Under color of authority is a" legal phrase used in the United States indicating a person is claiming or implying the acts he or she is committing are related to and legitimized by his or her role as an agent of governmental power, especially if the acts are unlawful."  The FBI's website makes it clear that deprivation of civil rights extends beyond government officials to persons who are bound by laws, statutes, ordinances, or customs. LPR and its Board of Directors are wholly bound by Florida Statute 718 in their governance of LPR and its members. BLUE SKY and SCHEINER are equally bound  through contractual arrangements with LPR and through Fla. Stat 468 which regulates BLUE SKY and SCHEINER is as well.

93. LM FUNDING was the assignee of LPR' alleged unlawful debt, collecting through BLG in the LM FUNDING  name but demanding remuneration to LPR under LPR's right to lien. LPR's governance of the condominium and treatment of its members including its right to lien was wholly governed by Statute—the Condominium Act-- and in this case the Condominium Act as

it existed on January 16, 2000; therefore, LM FUNDING was equally under the constraints of the Statute and knew or should have known the contents of the lease contract in LPR's possession.

94. LM FUNDING through the employment of law firm BLG and its contractual relationship with LPR became part of a 'state actor rent-grabbing -team'. The U.S. Supreme Court has found that private parties become state actors when one or more of four factors are present:

i. A public function test is met for state actor when a private entity exercises "powers traditionally exclusively reserved to the State **or** if its actions may be "fairly attributable to the State " The taking of property in Florida is a function reserved for the adjudication of the Courts up until the time that the law's revision to the Condominium Act was passed in 2010, and as it did not apply retroactively to condominiums without amendment to their declarations, in this case, it remained a public function.

The State's repeated policy of inaction and refusal to enforce its own law and their action in alerting the parties involved on the rent-grabbing team that they were free to trample SILVERTHORNE's civil rights, without their interference, gives plausible, reasonable and proximate cause to say that the actions of this Defendant can be fairly attributable to the State's broadcasted policy of inaction. The Defendant became the State. LM FUNDING, therefore, by its actions and through its employment of BLG to collect a debt of LPR, a debt they knew to be unlawful, caused, interfered and replaced itself with a normally State function and denied SILVERTHORNE access to the courts and due process, seized her property's rent, and threaten her ability to be secure in her home  The inaction of the State in enforcing its law generally State

wide and specifically here after SILVERTHORNE's multiple requests for their intervention can "fairly" be ascertained to be "attributable" directly to the State's inaction.

ii To demonstrate the Defendant's state action under the state compulsion **test**, SILVERTHORNE is required to show that the state exercised such coercive power or provided such significant encouragement, either overt or covert, that the choice of the Defendant must in law be deemed to be that of a State's Actor. Here based on the State's general (covert) silence on a matter well reported by major media, without commenting to the media on the non-retroactive status of its law, and therefore, its inapplicability to any condo then existing in the State of Florida, compounded by its overt encouragement by its action in broadcasting in its letters to LM FUNDINGS's rent-grabbing-contractually-obligated teammate, LPR, that it would not enforce its own law, the Defendant, LM FUNDING became a 'State Actor.' The Division of Condominium's gave clear, significant encouragement of promised withdrawal of enforcement and inaction on four occasions. The State's withdrew its jurisdiction over the Statute coincident to the foreclosure crisis and the impending perceived doom of many entities that would become the charge of the State. Survival became a shared goal of the associations and the State, and fundamental freedoms of a large class of Florida's citizens were subverted. They withdrew the power to investigate matters such as lock out from one's home and put that very major violation of civil rights in a minor category

iii The circumstances here pass the symbiotic relationship or **nexus test**. There was a sufficiently close **nexus** between the state and the challenged action because LPR was a wholly regulated entity; therefore, SILVERTHORNE's argues, LM FUNDINGS's illegal actions on behalf of LPR became the State's illegal actions because the State was given the opportunity four times to

correct the wrongful actions of its charge and the State not only chose not to, but had, on October 1, 2008 adopted a policy that deliberately withdrew the Division's jurisdiction over that matter. State enforcement inaction and the action of broadcasting their intent to not take action significantly aided and abetted LM FUNDING's actions in collecting efforts on an unlawful debt for LPR; its actions, therefore, may properly be characterized as "state action."

vi The State became entwined with the actions of the Defendant LM FUNDING, because they knew of the serious deprivation of SILVERTHORNE's civil rights of due process and her rights to be secure in her home and not have property unlawfully seized and they did not chose to enforce the violations of LPR's interaction with LM FUNDING: They said, in writing : if you go right ahead and do it, we will do nothing to stop you. They told the rent-grabbing LPR team they were not going to pursue them with enforcement. Inaction became the action of non enforcement.

95. LM FUNDING in its capacity as a State Actor deprived SILVERTHORNE of her constitutional due process rights under the U.S. Constitution's Fourteenth Amendment, and the Fourth Amendment's prohibition against illegal seizure. It deprived her third party tenant as well, by participating in rent-grabbing activities that included lock out from the property, making Silverthorne insecure in her ability to offer a secure premise to the renting public, and LM FUNDING deprived SILVERTHORNE with loss of the benefit and control of her property, rental income and the ability to rent the apartment property as a result of an established state procedure that in this case violates due process rights. LM FUNDING interfered with SILVERTHORNE's possessory interest in and dominion over her property and the lock out left her insecure in her possession of it and its ability to provide her with income free of a potential

liability to her tenant for their safety and finally for her own safety when she wanted to reoccupy it.

96. Because LM FUNDING  became a State Actor; therefore, LM FUNDING violated Silverthorne's 'Right to Privacy' under the Florida Constitution's Article I, Bill of Rights, Section 23 when they first caused a letter to be written to SILVERTHORNE's tenant and then caused to be posted an open face letter on SILVERTHORNE's door. SILVERTHORNE's tenant did not receive a subsequent letter in the mail.

97.  SILVERTHORNE extends her claim  under these fact to then assert: LM FUNDING not only violated the   Florida Constitution Article I Sec 2,9, 10 and 12, it violated  Sec 23 as well The Florida Right to Privacy law, and, therefore,also the  U.S. Constitution's Ninth Amendment under 'color of law' Silverthorne then argues: the federal Court will have an opportunity here to advance down the 'Yellow Brick Road' of the Ninth Amendment to see if in this case,  the specter of the extension of the Ninth Amendment's coverage of non-enumerated rights can bring a violation into play for invasion of  SILVERTHORNE's privacy as so addressed in the FDCPA: The disclosure of a non-existent debt, first  to tenant and his girlfriend and then wide spread in SILVERTHORNE's building to the owners, renters and visitors that came to the  LPR premise violated SILVERTHORNE's privacy causing embarrassment and loss of business and personal reputation

98.    Because of the Defendant LPR's abuse of the Declaration, SILVERTHORNE has no debt and still has no debt

99. SILVERTHORNE has suffered actual, general and specific damages as a result of the LM Funding's violations of her civil rights. Defendant's violations proximately caused these losses, which defendant knew or should have known would be the invariable result of its actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior and they conspired with others to do so.

100. *Wherefore* , SILVERTHORNE requests this court to enter judgment in her favor and seeks actual, general, statutory and special damages from defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT VI

### VIOLATION OF THE FDCPA AGAINST BLG

101. SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1-66 with the same force and effect as herein set forth and further alleges.

102. Defendant BLG knew or should have known the debt was unlawful and BLG knew or should have known the content of SILVERTHORNE's condominium documents and lease; BLG was hired to be the collector for LM FUNDING, the LPR assignee for its defaulted debt and therefore meets 15 USC 1692(6) (a) definition of a "debt collector." BLG was aware or should have been aware of all the interrelated facts, history and complaint background contained in paragraphs 1-66 of the complaint. Maintenance fees and special assessments meet the definition of a debt when they are legitimate. In the entire course of their action, over continuing violation and an on-going accrual of episodes, running from March 2010 to March 2012, BLG overtly,

Page | 45

knowingly, repeatedly, intentionally, willfully, maliciously and, or negligently violated provisions of the FDCPA, while serving as LM FUNDING's collection agent, rising to the level of civil theft, fraud and conspiracy to commit fraud, amounting to outrageous actions and behavior that they knew or should have known to be unlawful in the following manner:

i. 15 USC 1692 (e)Used a false, deceptive, or misleading representation or means in connection with the collection of a debt in violation of BLG alleged they had a right to SILVERTHORNE rent and that she had a debt

ii. 15 USC 1692 (2) (a) and (b): The false representation of --

(A) The character, amount, or legal status of any debt; there was no debt

(B) The compensation which may be lawfully received by any debt collector for the collection of a said debt; they were therefore due nothing

Iii 15 USC 1692 (4):  The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  They represented they had a legal right to SILVERTHORNE's rent

iv. 15 USC 1692(5) the threat to take any action that cannot legally be taken or that is not intended to be taken.

v. 15 USC 1692 (7) They threated lock out and eviction which was: The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer. They represented SILVERTHORNE did not pay monies due.

vi. 15 USC 1692(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.   They did not tell SILVERTHORNE's tenant that SILVERTHORNE claimed she owed nothing.

vii 15 USC 1692(10) BLG used false representations or deceptive means to collect or attempt to collect any debt. They claimed LPR had a right to the money and the tenant would be evicted if he did not pay LPR the rent. BLG violated  this section and its subsection denoted above specifically: by causing a foreclosure lien to be repeatedly  placed on  SILVERTHORNE's property without due process  and with no intent to foreclose on the property; representing and by communicating an unlawful debt to third parties, SILVERTHORNE's tenant and residents of LPR, first by causing a letter to be written and then by posting or causing to be posted open faced on SILVERTHORNE's door letters that represented SILVERTHPORNE had a debt to the association without disclosing the fact SILVERTHORNE disputed it by  claim she had been absolved of the debt by the association because of unlawful governance the debt did not exist.; it was originally unlawful; and by representing that a law of the State of Florida gave them legal authority to demand the rightful rent derived from SILVERTHORNE's property when they knew or should have known the representations to be false. And finally: by participating in the threat and actual lock out of SILVERTHORNE and her tenant from the property.

viii Communicating with a third party in violation of 15 USC 1692c (b)

BLG had no prior consent when they communicated with SILVERTHORNE's tenant and no

legal right to do so with use of the new law 718.116(11) that did not apply to her, and they did so

first after she had in writing disputed the debt and then repeatedly after she had disputed the fact

that not only did she have no debt but that the rent grabbing law did not apply to her.

ix. 15 USC 1692d (1), BLG Engaged in conduct the natural consequence of which was to harass,

oppress, and abuse SILVERTHORNE in connection with the collection of a debt they knew to

be unlawful by the use of criminal means to harm the property of SILVERTHORNE specifically

extorting the wrongfully expropriate tenant's rent, SILVERTHORNE's rightful property, when

they knew they had no right to it, amounting to theft of Silverthorne's rent.

x. Used unfair practices and unconscionable means to collect a debt by implementing the

collection of an amount not expressly authorized by the agreement (Declaration of

Condominium), nor permitted by law, and by taking or threatening to take any non-judicial

action to effect disablement or disposition of property in violation of 15USC 1692f (1) and (6)

(a), (b), and (c). (1), because the law they cited as authorization did not apply to

SILVERTHORNE and they knew it did not.

xi.  BLG  violated 15 USC 1692 (g) (b) of the FDCPA when after SILVERTHORNE disputed

both the nature and amount of debt as well as their ability to use new provisions of the

Condominium Act as a collection tool, and they failed to properly investigate the claim and

continued collection efforts and did so continuously over three separate periods when LPR

continuously breached its agreement with SILVERTHORNE.

xii. BLG also violated 15USC 1692f (1) and (6) (a), (b), and (c). (1), including continuing overtly beginning on February 28, 2010, again on March 23, 2011 and finally on March 7, 2012 when they placed a lien on SILVERTHORNE's property for the third time covertly without notice when they had SILVERTHORNEs address and had communicated with her with debt demands beginning in May of 2010.

103. SILVERTHORNE has suffered actual, general and specific damages as a result of the BLG violations of the FDCPA. Defendant's violations of the act proximately caused these losses, which defendant knew or should have known would be the invariable result of its actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior and they conspired with others to do so.

104. *Wherefore* , SILVERTHORNE requests this court to enter judgment in her favor and seeks actual, general, statutory and special damages from defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT VII

## VIOLATION OF THE FCCPA AGAINST BLG

105 SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 with the same force and effect as herein set forth and further alleges:

106. Defendant BLG knew or should have known the debt was unlawful and BLG knew or should have known the content of Silverthorne's condominium documents and lease BLG

violated FLORIDA STATUTE 559.72(3) and (6), when their collector BLG repeatedly told SILVERTHORNE, after she disputed the debt, that they would disclose to SILVERTHORNE's tenants orally or in writing directly or indirectly information affecting the debtor's reputation for credit worthiness without also informing the debtor that the existence of the dispute would also be disclosed.

107.  BLG violated FLORIDA STATUTE 559.72(7) by willfully and repeatedly and continually communicating with the debtor and her tenants with such frequency as can be reasonably expected to harass the debtor or her tenants and they fully engaged in other conduct which can reasonably be expected to abuse and or harass the debtor or her tenants as follows:

(a) Caused to be communicating in writing to SILVERTHORNE and her tenant the demand to pay LPR rent or face tenant eviction.

(b) Conspired to lock tenant and SILVERTHORNE out her property.

108. BLG violated  FLORIDA STATUTE 559.72 (5) by causing to be disclose to SILVERTHORNE'S's tenants and anyone passing by her unit's doorways a disputed debt that was under agreement to be set aside effecting her reputation as an individual and a Realtor.

109.  BLG disclosed information concerning the existence of a debt, known to be reasonably disputed by the debtor, without disclosing that fact, thereby violating FLORIDA STAUTE 559.72 (6).

110. BLG repeatedly attempted and threatened to enforce a debt and then did enforce an unlawful debt by filing liens without notice on behalf of LM FUNDING and LPR. demanding her tenant's rent for LPR, which they benefited from, when they knew or should have known,

first by investigation and then after SILVERTHORNE told them that the debt was not legitimate and that no the legal right to seize tenant's rent existed for SILVERTHORNE's condominium in violation of FLORIDA STATUTE 559.72(9).

111.  SILVERTHORNE has suffered actual, general and specific damages as a result of the BLG violations of the FCCPA.  Defendant's violations of the act proximately caused these losses, which defendants knew or should have known would be the invariable result of their actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior and they conspired with others to do so

112 *Wherefore* , Silverthorne requests this court to enter judgment in her favor and seeks actual, general, statutory and special damages from  defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT VIII

## VIOLATION OF THE FTCA BY BLG

113.  SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 with the same force and effect as herein set forth and further alleges:

114. Defendant BLG  knew or should have known the debt was unlawful  and BLG knew or should have known the content of Silverthorne's condominium documents and lease.  Section 814 of the FDCPA, 15 USC 1692 l states: " For purpose of the exercise by the Commission of its functions and powers under the Federal Trade Commission Act [15 U.S.C. 41 et seq.], a violation of this subchapter shall be deemed an unfair or deceptive act or practice in violation of

that Act, " and further states: "All of the functions and powers of the Commission under the
Federal Trade Commission Act are available to the Commission to enforce compliance by any
person with this subchapter, irrespective of whether that person is engaged in commerce or meets
any other jurisdictional tests in the Federal Trade Commission Act, including the power to
enforce the provisions of this subchapter in the same manner as if the violation had been a
violation of a Federal Trade Commission trade regulation rule. The court has the power to
enforce the provisions of the FDCPA in the same manner as if the violation had been a violation
of the Federal Trade Commission trade regulation rule; therefore any violation of the FDCPA
"shall be deemed an unfair or deceptive act or practice in violation of that act. 15 USC 1692/ §
814 (a).

115. BLG with intent, through the use of commerce in an immoral, unethical, oppressive,
unscrupulous way engaged in an inequitable assertion and use of its client's LPR power of
governance, by utilizing a contractual agreement between the two, to mislead
SILVERTHORNE's tenant and deceived him into believing that their letter was a legitimate and
legal demand for his rent supported by Florida law and that he must surrender his rent to LPR on
their behalf.. Had SILVERTHORNE not been an expert in condominium law application it
would have deceive her.  These unfair and deceptive acts caused substantial damages to
SILVERTHORNE including loss of income, foreclosure of their property and income that would
give them the ability to renegotiate their mortgage.  Its misrepresentation was material and it was
reasonable to believe the machinations.

116. SILVERTHORNE lost the use of her property  and had liens placed without notice on her
property which were no removed in accordance with the Condominium Acts provisions and the

rapid appreciation of rents that occurred during the depravation of her rightful rent. BLG sold its services to undertake the illegal actions to LM Funding LPR with mutual knowledge and consent. The scenario tenant was faced with had the tendency, capacity and likelihood to deceive was unfair and therefore violated Section 5 of the FTCA 15 USC 45 9a) (1). Any and all violations of the FDCPA is equal a violation of the FTCA

117. SILVERTHORNE has suffered actual, general and specific damages as a result of BLG's violations of the FTCA.  Defendant's violations of the act proximately caused these losses, which defendant knew or should have known would be the invariable result of their actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior and they conspired with others to do so.

118. *Wherefore* , SILVERTHORNE requests this court to enter judgment in her favor and seeks actual, general, statutory and special damages from defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT X

## VIOLATION OF THE FDUTPA BY BLG

119. SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 as well as paragraph 114-116 with the same force and effect as herein set forth and further alleges:

120. Violations of the FTCA constitute per se violations of the FDUTPA F.S. §501.201, per § 501.204, unlawful acts and practices, and if they occur in more than one circuit court area which this did, regulatory authority is the Attorney General of Florida.

121. SILVERTHORNE is a senior citizen as defined by the statute and has suffered actual, general and specific damages as a result of the BLG violations of the FDUTPA. Defendant's' violations of the act proximately caused these losses, which defendant knew or should have known would be the invariable result of their actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior.

122. *Wherefore*, SILVERTHORNE requests this court to enter judgment in her favor and then refer the matter to the Florida Attorney General. SILVERTHORNE seeks actual, general, statutory and special damages trebled, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status (under §57.105, FLORIDA STATUTES, as applicable, and any other relief this Court deems just and proper.

## COUNT XI

## VIOLATION OF SILVERTHORNE'S CIVIL RIGHTS PROVIDED BY THE US. CONSITUTION'S FOURTH, NINETH AND FOURTEETH AMENDMENT UNDER COLOR OF LAW PURSUANT TO 42 USC 1983 AND THEREFORE ARTCLE I SECTION2, 9,10,12 AND 23 OF THE FLORIDA CONSTUTION BY BLG

123. SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 with the same force and effect as herein set forth and further alleges:

124 Defendant BLG should have known and then knew the debt was unlawful.  Defendant BLG knew  the content of SILVERTHORNE's condominium documents and lease the association has them in their possession at all times by statute; therefore, by implementing collections for LM FUNDING as LPR's assignee against SILVERTHORNE:

125. It caused to be publicized in a wide spread manner, on more than one occasion a matter concerning the private life of SILVERTHORNE to a third party, her tenant and the visitors, owners and tenants living in LPR, and therefore, any others they transmitted knowledge of the content of the letter to, a letter which knowing used a false representation that SILVERTHORNE had a debt

ii) Falsely represented that they had the right to collect it for LPR by demanding her tenant's rent when they knew no such remedy existed in the law and said debt was unlawful because the special assessments were done unlawfully, and LPR had therefore agreed with SILVERTHORNE: there was no debt. Additionally, the rent demand authorized by the new section 718 provision of the Condominium Act did not apply to existing condominiums and

iii) its actions  caused and extended to the lock out of a third party tenant-- and even SILVERTHORNE  herself -- in order to effectuate the delivery of the proceeds of the tenant's rent and deprive her of  liberty, due process and rights to her property's income

126. These actions presented Silverthorne in a false light to her tenant and neighbors and visitors to her building which any reasonable person would find offensive and unreasonable. The dispute was not a matter of legitimate concern to the public including the residents, owners, tenants and visitors that passed by SILVERTHORNE's door or received knowledge of the posting from

others, because it was an unlawful action: the seizure of SILVERTHORNE rightful use of her property and therefore of no concern to them.

127 SILVERTHORNE suffered damages as a direct result of the letters mailed and posted open faced on her door and by losing rent that rightfully belong to her, the ability to pay regular maintenance, maintain her personal expenses, embarrassment, loss of reputation and potential professional real estate income and being unable to continuously pursue her education in a timely fashion.

128 The State of Florida was in general made aware of the widespread, statewide misuse of a new provision of the state's Condominium Act by major Florida media stories, and in SILVERTHORNE's case was made specifically and directly aware of the deprivation of her rights by her -no less than four - complaints to the state's Division of Condominiums and one to its Financial Regulatory Division, submitted twice, once for BLG and Blue Sky and once for LM FUNDING. All of the States decisions not to enforce were sent to the Association as well as SILVERTHORNE. The State took no enforcement action at all, and other measures to 'educate" the association of wrongdoing when they already knew they were doing wrong, while simultaneously telling LPR they did not intend to do anything about their conduct, was inadequate and inappropriate action to prevent the proximate cause of the clear, on-going depravation of SILVERTHORNE's civil rights.

129 Under color of authority is a" legal phrase" used in the United States indicating a person is claiming or implying the acts he or she is committing are related to and legitimized by his or her role as an agent of governmental power, especially if the acts are unlawful." The FBI's website makes it clear that deprivation of civil rights extends beyond government officials to persons

"who are bound by laws, statutes, ordinances, or customs." LPR and its BOARD are wholly bound by Florida Statute 718's relevant vintage in their governance of LPR and its members. BLUE SKY and SCHEINER are equally bound through contractual arrangements with LPR and through Fla. Stat 468 which regulates BLUE SKY and SCHEINIER is as well.

130 BLG collected for LM FUNDING, the assignee of LPR' alleged unlawful debt, collecting by demanding remuneration to LPR under LPR's right to lien. LPR's governance of the condominium and treatment of its members including its right to lien was wholly governed by Statute—the Condominium Act-- and in this case the Condominium Act as it existed on January 16, 2000; therefore, BLG was equally under the constraints of the Statute

131. Therefore, BLG and by and through its contractual relationship with LM FUNDING and LPR became part of a 'state actor rent-grabbing -team'. The U.S. Supreme Court has found that private parties become state actors when one or more of four factors are present:

i. A public function test is met for state actor when a private entity exercises "`powers traditionally exclusively reserved to the State or if its actions may be "fairly attributable to the State " The taking of property is a function reserved for the adjudication of the Courts up until the time that the law's revision to the Condominium Act was passed, and as it did not apply retroactively to condominiums without amendment to their declarations, in this case, it remained a public function.  The State's repeated refusal to enforce its own law and their action in alerting the parties involved on the rent-grabbing team that they were free to trample Silverthorne's civil rights, without their interference, gives plausible, reasonable and proximate cause to say that the action is of this Defendant can be fairly attributable to the State's broadcasted policy of inaction. BLG  therefore, by its actions and through its employment of BLG to collect a debt of LPR, a

debt hey knew to be unlawful, caused, interfered and replaced itself with a normally State function and denied SILVERTHORNE access to the courts and due process. The inaction of the State in enforcing its law generally State wide and specifically here after Silverthorne's multiple requests for their intervention can "fairly" be ascertained to be "attributable" directly to the State s enforcement inaction, the act of refusing to enforce and send alternatively an education letter

ii To demonstrate state action under the state compulsion **test**, SILVERTHORNE is required to show that the state exercised such coercive power or provided such significant encouragement, either overt or covert, that the choice of the Defendant must in law be deemed to be that of a State's Actor. Here based on the State's general (covert) silence on a matter well reported by major media, without comment on the non-retroactive status of its law, and therefore, its inapplicability to any condo then existing in the State of Florida, compounded by its overt encouragement by broadcasting in its letters to BLG and its rent-grabbing-contractually-obligated teammate, LPR, that it would not enforce its own law, the Defendant, BLG became a 'State Actor.' The Division of Condominium acted to give clear, significant encouragement of promised withdrawal of enforcement inaction on four occasions.   The State acted to withdraw its jurisdiction over the statute coincident to the foreclosure crisis and the impending perceived doom of many entities that would become the charge of the State. Survival became a shared goal of the associations and the State and fundamental freedoms of a large class of citizens were subverted

iii The circumstances here pass the symbiotic relationship or **nexus test**.  There was a sufficiently close **nexus** between the state and the challenged action because LPR was a wholly regulated

entity; therefore, SILVERTHORNE's argues, LPR illegal actions became the State's illegal actions because the State was given the opportunity four times to correct the wrongful actions of its charge and the State not only chose not to but had on October 1, 2008 adopted a policy that deliberately withdrew the Divisions jurisdiction over that matter. The State acted to adopt a policy of inaction; it significantly aided and abetted BLG's actions in collecting efforts on an unlawful debt for LPR; its actions therefore may properly be characterized as "state action" as a member of the rent-grabbing team

vi The State became entwined with the actions of the Defendant LPR, because they knew of the serious deprivation of SILVERTHORNE's rights and did not chose to enforce the violations of LPR and to tell the team they were not pursuing them.

132. BLG in its capacity as a State Actor deprived SILVERTHORNE of her constitutional due process rights under the U.S. Constitution's Fourteenth Amendment's due process provisions and the Fourth Amendment's prohibition against illegal seizure. It deprived her third party tenant as well, by participating in rent-grabbing activities that included lock out from the property, making SILVERTHORNE insecure in her ability to offer a secure premise to the renting public, and BLG deprived SILVERTHORNE with loss of the benefit and control of her property, rental income and the ability to rent the apartment property as a result of an established state procedure that itself violates due process rights. BLG interfered with SILVERTHORNE's possessory interest in and dominion over her property and the lock out left her insecure in her possession of it and its ability to provide her with income free of a potential liability to her tenant for their safety.

133. Because BLG Became a State Actor; therefore, BLG violated SILVERTHORNE's rights under the Florida Constitution Article I, Bill of Rights, 2,9,10,12 as well as her 'Right to Privacy' under the Florida Constitution's Article I, Bill of Rights Section 23, when they first caused a letter to be written to SILVERTHORNE's tenant and then caused to be posted an open face letter from BLG on SILVERTHORNE'S's door. SILVERTHORNE's tenant did not receive a subsequent letter in the mail.

134. SILVERTHORNE extends her claim to a BLG violation Silverthorne's privacy rights under the ninth amendment and as they as a State Actor they have violated SILVERTHORNE's privacy rights under the Florida Constitution, Article I Sec 23.

135. SILVERTHORNE has suffered actual, general and specific damages as a result of the BLG violations of her civil rights. Defendant's violations proximately caused these losses, which defendant knew or should have known would be the invariable result of its actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior which includes their conspiring with others.

136. *Wherefore* , SILVERTHORNE requests this court to enter judgment in her favor and seeks actual, general, statutory and special damages from defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT XII

## VIOLATION OF THE FDCPA BY LPR COLLECTIVELY AND ITS BOARD OF DIRECTORS INDIVIDUALLY, DESORBO, DINICOLA AND YEAMAN

SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66, 68 and 69 with the same force and effect as herein set forth and further alleges:

137. Defendant LPR , AND DESORBO DINICOLA AND YEAMAN [" BOARD"]knew the debt and their method of assessment was unlawful and are decision makers who had a fiduciary responsibility to Silverthorne by statute, the Condominium Act,  are therefore subrogee's of LPR and equally debt collectors.

138.   During the period before a deal was cemented in 2009, LPR allowed BLUE SKY to collect in their name never mentioning the LPR name but it was under LPR control at all times; they repeated the action with retention of LM FUNDING[8] LPR therefore is a debt collector, because it was a false debt[9] and because it allowed the appearance that someone else was collecting the debt while LPR maintained control over it

_____

[8]Teng v. Metropolitan Retail Recovery Inc., 851 F. Supp. 61 - Dist. Court, ED New York 1994

[9] "Please see  6[th] district case Bridge v. Ocwen Federal Bank 681 F 3d 355(2012) It states this concept well and cites the other  district federal case law.  Silverthorne asks the court to wrap their mind around the fact that Congress does not allow you to be neither  a creditor nor  a debt collector and says that if you are involved in pursuing debts and it's a false debt you're a debt collector because you're not a creditor when the debt is false".

139. LPR and its BOARD therefore violated the FDCPA exactly as enumerated in the LM Funding violation which have been herein re-alleged.

140. LPR and the Board further violated the FDCPA by invading Silverthorne privacy, by allowing their contracted debt collector Blue Sky to: at meetings, in broadcast emails and on the association website to publish to other members a false debt. Congress explicitly recognized a consumer's inherent right to privacy in the FDCPA stating that "Abusive debt collection practices contribute to the . . . invasion of privacy." 15 USC 1692 (a).

141. LPR and its Board used unfair practices or unconscionable means to collect a debt after they breeched the oral agreement with Silverthorne, implied both in fact and in law that concerned an original amount attributable to special assessments not authorized by the Association's Declaration of Condominium,   and allowing their employee Blue Sky to cause Silverthorne to lose a tenant by discussing Silverthorne's alleged false debt with the tenant and not correcting the affront. And by, unbeknownst to Silverthorne, in February 2010 when they allowed BLG to secretly file a lien against Silverthorne, then  when they had BLG begin debt collection activities in May 2010, with a surprise attack directly to Silverthorne's tenants in July 2010 ceasing and going back to the agreement on July 22, 2010  all in violation of 15 USC 1692 f §808 (1) causing continuing violation by BLG until August 4 , 2010 and by BLUE SKY to August 19, 2010, breaking it a second time  beginning on December  29, 2010 by denying Silverthorne Tenants fobs,  posting the letter on the door open faced on January 5th,  denying Silverthorne's tenant on April 14 , 2011 and continuing harassment to the present day. Silverthorne is still locked out of the premise based on a false debt tolling the FDCPA statute of

limitations all the way.   LPR and its Board have the element of nexus between them, together as their fiduciary to Silverthorne is one big symbionic lump.

142. SILVERTHORNE has suffered actual, general and specific damages as a result of LPR and its individual Board member's Desorbo, Yeaman and DiNicola's violations of the FDCPA. Defendant's violations proximately caused these losses, which defendant knew or should have known would be the invariable result of its actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior which includes their conspiring with others.

143. *Wherefore* , Silverthorne requests this court to enter judgment in her favor and seeks actual, general, statutory and special damages from defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT XIII

## VIOLATION OF THE FCCPA BY LPR COLLECTIVELY AND, DESORBO, YEMAN AND DINICOLA INDIVIDUALLY.

144.SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 and 72-76with the same force and effect as herein set forth and further alleges:

145. SILVERTHORNE re-alleges here each and every count of FCCPA violations alleged against LM Funding equally against LPR and the BOARD because they authorized all their actions on a false debt.

144. Defendant LPR and the BOARD knew the debt and its method of collection was unlawful and LPR knew of the content of SILVERTHORNE's condominium documents and lease ;it was in their possession. Additionally, LPR caused to be published and posted by BLUE SKY, before the general membership of the Associations a list of names alleged to be indebted to the association in association meetings and on association web sites, as well as sending broadcast emails directing the association's members telling them where they could find the lists, and bringing them to association meetings in violation of FLORIDA STATUTE 559.72(14).

145 SILVERTHORNE has suffered actual, general and specific damages as a result of LPR violations of the FCCPA. Defendant's violations proximately caused these losses, which defendant knew or should have known would be the invariable result of its actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior which includes their conspiring with others.

146. *Wherefore*, SILVERTHORNE requests this court to enter judgment in her favor and seeks actual, general, statutory and special damages from defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT XIV

## VIOLATION OF THE FTCA BY LPR COLLECTIVELY AND DESORBO, YEAMAN AND DINICOLA, INDIVIDUALLY.

147. SILVERTHORNE repeats, re-alleges and incorporates by reference the allegations in paragraphs 1- 66 and 80-82 with the same force and effect as herein set forth and further alleges

148. Defendant LPR and the BOARD knew  the debt  and its method of collection was unlawful and LPR knew of the content of Silverthorne's condominium documents and lease ;it was in their possession.  LPR violated the FTCA in the exact same manner and same way as LM FUNDING did because they contracted with LM funding for the collection of a false debt and were the nexus of the entire operation's dependence on inapplicable Condominium Act provisions. They were responsible for each and every action of all the defendants.

149. SILVERTHORNE has suffered actual, general and specific damages as a result of LPR violations of the FTCA.   Defendant's violations proximately caused these losses, which defendant knew or should have known would be the invariable result of its actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior which includes their conspiring with others.

150. *Wherefore*, SILVERTHORNE requests  this court to enter judgment in her favor and seeks actual, general, statutory and special damages from  defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT XV

## VIOLATION OF THE FDUTPA BY LPR COLLECTIVELY AND DESORBO, DINICOLA AND YEAMAN INDIVIDUALLY (THE BOARD)

Silverthorne repeats, re-alleges and incorporates by reference the allegations in paragraphs 1- 66 and148-149 with the same force and effect as herein set forth and further alleges

148.  LPR and the BOARD violated the FDUTPA in the exact same manner and same way as LM FUNDING did because they ordered and directed the entire operation, contracted with LM FUNDING for the collection of a false debt and were the nexus of the entire operation's dependence on inapplicable Condominium Act provisions. . Silverthorne has suffered actual, general and specific damages as a result of LPR violations of the FDUTPA.

149.  Defendant's violations proximately caused these losses, which defendant knew or should have known would be the invariable result of its actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior, which includes their conspiring with others.

150. *Wherefore*, SILVERTHORNE requests  this court to enter judgment in her favor and seeks actual, general, statutory and special damages from  defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT XVII

**VIOLATION OF SILVERTHORNE'S CIVIL RIGHTS PROVIDED BY THE US. CONSTIUTION'S FOURTH, NINETH AND FOURTEETH AMENDMENT UNDER COLOR OF LAW PURSUANT TO 42 USC 1983  AND THEREFORE ARTCLE I SECTION2, 9,10,12  AND 23 OF THE FLORIDA CONSTUTION BY LPR COLLECTIVELY AND DESORBO DINICOLA AND YEAMAN COLLECTIVELY**

151. Silverthorne repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 with the same force and effect as herein set forth and further alleges:

152. Defendant LPR and its BOARD knew the debt was unlawful and knew the content of Silverthorne's condominium documents and lease by statute; therefore, by authorizing collections for LM as LPR's assignee against Silverthorne:

153. It caused to be publicized in a manner that would allow its widespread dissemination in Plaintiff's building and beyond, on more than one occasion a matter concerning the private life of SILVERTHORNE to a third party, her tenant and the visitors, owners and tenants living in LPR, and therefore, any others they transmitted knowledge of the content of the letter to, a letter which knowing used a false representation that SILVERTHORNE had a debt

ii) Falsely represented that they had the right to collect it for LPR by demanding her tenant's rent when they knew no such remedy existed in the law. The debt was unlawful because the special assessments were done unlawfully, and LPR had therefore agreed with SILVERTHORNE there was no debt. Additionally, the rent demand authorized by the new section 718 provision of the Condominium Act did not apply to existing condominiums and

iii) its actions caused and extended to the lock out of a third party tenant-- and even Silverthorne herself -- in order to effectuate the delivery of the proceeds of the tenant's rent and deprive her of liberty, due process and rights to her property

154. These actions presented Silverthorne in a false light to her tenant and neighbors and visitors to her building which any reasonable person would find offensive and unreasonable. The dispute was not a matter of legitimate concern to the public including the residents, owners, tenants and

visitors that passed by Silverthorne's door or received knowledge of the posting from others, because it was an unlawful action: the seizure of Silverthorne rightful use of her property and therefore of no concern to them.

155. Plaintiff suffered damages as a direct result of the letters mailed and posted open faced on her door and by losing rent that rightfully belong to her, the ability to pay regular maintenance, maintain her personal expenses, embarrassment, loss of reputation and potential professional real estate income and being unable to continuously pursue her education in a timely fashion.

156 The State of Florida was in general made aware of the widespread, statewide misuse of a new provision of the state's Condominium Act by major Florida media stories, and in Silverthorne's case was made specifically and directly aware of the deprivation of her rights when her no less than four complaints where submitted to the state's Division of Condominiums and two complaints were submitted to its Financial Regulatory Division, once for BLG and Blue Sky and once for LM Funding. All of the States decisions not to enforce were sent to the Association as well as Silverthorne. The State took no enforcement action at all, and other measures to 'educate" the association of wrongdoing when they already knew they were doing wrong, while simultaneously telling LPR they did not intend to do anything about their conduct, was inadequate and inappropriate action to prevent the proximate cause of the clear, on-going depravation of Silverthorne's civil rights.

157. Under color of authority is a" legal phrase" used in the United States indicating a person is claiming or implying the acts he or she is committing are related to and legitimized by his or her role as an agent of governmental power, especially if the acts are unlawful." The FBI's website makes it clear that deprivation of civil rights extends beyond government officials to persons

who are bound by laws, statutes, ordinances, or customs. LPR and its Board of Directors are wholly bound by Florida Statute 718 in their governance of LPR and its members. Blue Sky and Scheiner are equally bound  through contractual arrangements with LPR and through Fla. Stat 468 which regulates Blue Sky and Scheiner is as well.

158. LPR authorized BLUE SKY SCHEINER's and BLG's collection for LM FUNDING, the assignee of LPR' alleged unlawful debt, collecting by demanding remuneration to LPR under LPR's right to lien. LPR's governance of the condominium and treatment of its members including its right to lien was wholly governed by Statute—the Condominium Act-- and in this case the Condominium Act as it existed on January 16, 2000; therefore, every defendant was equally under the constraints of the Statute

159. LPR and by and through its contractual relationship with LM FUNDING, LPR and its BOARD became part of a 'state actor rent-grabbing -team'.

The U.S. Supreme Court has found that private parties become state actors when one or more of four factors are present:

i. A public function test is met for state actor when a private entity exercises "'powers traditionally exclusively reserved to the State **or** if its actions may be "fairly attributable to the State " The taking of property is a function reserved for the adjudication of the Courts up until the time that the law's revision to the Condominium Act was passed, and as it did not apply retroactively to condominiums without amendment to their declarations, in this case, it remained a public function.  The State's repeated actions of refusing to enforce its own law and their action in alerting the parties involved on the rent-grabbing team that they were free to trample

Silverthorne's civil rights, without their interference, gives plausible, reasonable and proximate cause to say that the actions of these Defendants can be fairly attributable to the State's <u>action</u> in broadcasting its policy of inaction. LPR, therefore, by its actions and through its employment of LM FUNDING to collect a debt of LPR, a debt they knew to be unlawful, caused, interfered and replaced itself with a normally State function and denied SILVERTHORNE access to the courts and due process. The inaction of the State in enforcing its law generally state wide and specifically here after SILVERTHORNE's multiple requests for their intervention can "fairly" be ascertained to be "attributable" directly to the State's act when they broadcast a policy of inaction.

ii To demonstrate state action under the state compulsion **test**, SILVERTHORNE is required to show that the state exercised such coercive power or provided such significant encouragement, either overt or covert, that the choice of the Defendant must in law be deemed to be that of a State's Actor. Here based on the State's general (covert) silence on a matter well reported by major media, without comment on the non-retroactive status of its law, and therefore, its inapplicability to any condo then existing in the State of Florida, compounded by its overt encouragement by broadcasting in its letters to LPR and its rent-grabbing-contractually-obligated teammates, LM FUNDING et al, that it would not enforce its own law, the Defendant, LPR, DESORBO DINICOLA AND YEAMAN became a 'State Actors.' The Division of Condominium's gave clear, significant encouragement of promised withdrawal of enforcement action on four occasions. The State's withdrew its jurisdiction over the statute coincident to the foreclosure crisis and the impending perceived doom of many entities that would become the charge of the State. Survival became a shared goal of the associations and the State and fundamental freedoms of a large class of citizens were subverted. They picked a victim as a

salve. condominium owners that found themselves suddenly in distress in an economic maelstrom, instead of pursuing the protagonist at fault. . . large banks. SILVERTYHORNE was one of them, but one of them that did not have a debt.

iii The circumstances here pass the symbiotic relationship or **nexus test**.  There was a sufficiently close **nexus** between the state and the challenged action because LPR, DESPRBO DINICOLA AND YEAMAN were a wholly regulated entity; therefore, SILVERTHORNE's argues, LPR illegal actions became the State's illegal actions because the State was given the opportunity four times to correct the wrongful actions of its charge and the State not only chose not to but had on October 1, 2008 adopted a policy that deliberately withdrew the Divisions jurisdiction over that matter and they broadcast their policy of inaction to the state. State inaction significantly aided and abetted all defendants actions in collecting on an unlawful debt for LPR; its actions therefore may properly be characterized as "state action."

vi The State became entwined with the actions of the Defendant LPR,DESORBO DINOCOLA AND YEAMAN  because they knew of the serious deprivation of Silverthorne's rights and did not chose to enforce the violations of LPR and its hired hands but chose to tell the team they were not pursuing them.

160. LPR, DESORBO, DINICOLA AND YEAMAN in their capacity as a State Actors deprived Silverthorne of her constitutional due process rights under the U.S. Constitution's Fourteenth Amendment's due process provisions and the Fourth Amendment's prohibition against illegal seizure and the right to be secure in her home and privacy under the Ninth Amendment to the US Constitution and Article I Section 23 of the Florida Constitution, and it deprived her third party tenant as well, by participating in rent-grabbing activities that included lock out from the

property, making SILVERTHORNE insecure in her ability to offer a secure premise to the renting public, and LPR deprived SILVERTHORNE with loss of the benefit and control of her property, rental income and the ability to rent the apartment property as a result of an established state procedure that itself specifically legislated the abrogation of due process for both the tenant and the owner/landlord. LPR interfered with SILVERTHORNES's possessory interest in and dominion over her property and the lock out left her insecure in her possession of it and its ability to provide her with income free of a potential liability to her tenant for his safety.

161. Because LPR, DESORBO DINICOLA AND YEAMAN became State Actors; therefore, they violated Silverthorne's 'Right to Privacy' under the Ninth Amendment and the Florida Constitution's Article I, Bill of Rights, Section 23 when they first caused a letter to be written to Silverthorne's tenant and then caused one to be posted an open face letter from BLG on Silverthorne's door. Silverthorne's tenant did not receive a subsequent letter in the mail.

**COUNT XIX**

**BREACH OF FIDUCIARY DUTY AGAINST LPR, COLLECTIVELY AND DESORBO, YEAMAN AND DINICOLA INDIVIDUALLY"THE BOARD'COLLECTOVELY AND INDIVIDUALLY .**

162 SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 with the same force and effect as herein set forth and further alleges

163 A fiduciary duty exists between the officers and directors of the association and the unit owners under FLORIDA STATUTE 718.111(1) (a). There is a nexus between the entity LPR and the BOARD

164. The BOARD collectively and individually owed a fiduciary duty to SILVERTHORNE to protect her expectancy interests in the Declaration of Condominium as defined by the Condominium Act that existed at the time of their incorporation. The Declaration of LPR defines the Condominium Act as the one that existed at the time of incorporation of their Declarations and did not provide for allowance of new laws without amendment to the condominium documents as provided by the Declaration.

165. SILVERTHORNE relied, trusted and reposed confidence in the BOARD of LPR to protect her rights to rely on the expected and anticipated governance of the Declaration of Condominiums, as defined by the Condominium Act at the time LPR was incorporated.

166. LPR and the BOARD intentional and willfully and therefore maliciously betrayed SILVERTHORNE's; their actions rose to the level of fraud, because they were made aware of the provision in the documents that disagreed with their procedures by legal counsel and avoided seeking a declaratory statement from the state and continued to deceive unit owners.

167. LPR and the BOARD breached their fiduciary duty to SILVERTHORNE when they:

(a) Levied special assessments not accordance with the condominium documents of LPR

(b) Instituted collection actions not provide or available to them, in the Declaration of Condominium of LPR, including but not limited to: the demand for tenants' rent, and open face postings and mailing of notices to Silverthorne  and her tenants, which are not provided under FLORIDA STATUTE 718.116 as it existed and is defined in the LPR Declaration of Condominiums.

(c). Contract with a third party in some way without a vote of the owners to allow them to share

in the rightful proceeds of the associations revenue, and in this case saying that

SILVERTHORNE had a debt they could collect

168. LPR and the Board further breached their fiduciary duty to SILVERTHORNE when they:

(a) Took SILVERTHORNE's rightful rent when she had no debt.

(b) Threaten Silverthorne's tenant at LPR with lock out unless they paid the association

Silverthorne's rent, and then actually did lock SILVERTHORNE herself out of her property at

LPR, a direct violation of Florida Statute.718.103, 106 and 303, potentially endangering tenant's

and Silverthorne's life, health and safety.

(c) Slandered Silverthorne's titles to her properties at 1610 Lenox Ave unit 506 by filing liens

without proper notice repeatedly and failing to remove them after 90 days in accordance with the

Condominiums Act provisions in § 718.116

169 The BOARD never sought a declaratory judgment from the State before they acted even

when asked to do so. The actions of LPR and the BOARD rise to the level of fraud.

170. FLORIDA STATUTE 718.123 (a) provides: "As required by s. 617.0830, an officer,

director, or agent shall discharge his or her duties in good faith, with the care an ordinarily

prudent person in a like position would exercise under similar circumstances, and in a manner he

or she reasonably believes to be in the interests of the association. An officer, director, or agent

shall be liable for monetary damages as provided in s. 617.0834, if such officer, director, or

agent breached or failed to perform his or her duties and the breach of, or failure to perform, his

or her duties . . . constitutes recklessness or an act or omission that was in bad faith, with

malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

171. Silverthorne has suffered both general and special damages as a result of LPR's and the BOARD's breaches of fiduciary duty. Their breeches proximately caused these losses, which they knew or should have known would be the invariable result of the breaches. Their conduct was willful, intentional and malicious, rising to the level of outrageous behavior.

172 *Wherefore*, Silverthorne requests this court to enter judgment in her favor and seeks general and specific damages from all defendants, plus costs, interest, any attorney's fees ( as provided by §57.105, FLORIDA STATUTES, as applicable), and any further relief this Court deems just and proper.

## COUNT XX

## BREECH OF CONTRACT AGAINST LPR COLLECTIVELY AND DESORBO DINICOLA AND YEAMAN INDIVIDUALY, THE BOARD.

173. SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 with the same force and effect as herein set forth and further alleges .

174. The Declaration of Condominium is a contract. The Board of Directors of a Condominium are responsible for adhering to it. SILVERTHORNE is a member of the association governed by it.

175 LPR and the BOARD repeatedly, beginning in 2007 and continuing to the present day repeatedly breached the contract by not governing under its provisions causing damages to

SILVERTHORNE by first causing large unaffordable assessments in rapid succession demanding rapid payment without a majority vote of the owners.

176 LPR and the BOARD, after inducing SILVERTHORNE not to seek legal remedy in April 2008 agreed there was no SILVERTHORNE debt because of the breach, entered into a oral agreement by acknowledging they had a written contract that has been breached. But they breach the contract anew in July 2010, December 2010 and April 2011 when they reinstituted trying to collect the false debt by wrongly extorting SILVERTHORNE's tenant to pay them his rent and then by denying re-rental of the unit respectively. They have continued to breech the contract to this day by locking SILVERTHORNE out of the premise. And they have publicized in a wide manner SILVERTHORNE's false debt.

177 Silverthorne has suffered both general and special damages as a result of LPR's and the BOARD's breeches of contract. Their breeches proximately caused these damages, the loss of rent, reputation and other income, which they knew or should have known would be the invariable result of the breaches. Their conduct was willful, intentional and malicious, rising to the level of outrageous behavior.

178 *Wherefore*, Silverthorne requests this court to enter judgment in her favor and seeks general and specific damages from all defendants, plus costs, interest, any attorney's fees ( as provided by §57.105, FLORIDA STATUTES, as applicable), and any further relief this Court deems just and proper.

## COUNT XXI

## PROMISORY ESTOPPEL AGAINST LPR COLLECTIVELY AND DESORBO, DINICOLA AND YEAMAN, COLLECTIVELY AND INDIVIDUALLY , THE BOARD

179 SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in

paragraphs 1- 66 with the same force and effect as herein set forth and further alleges .

180 The agreement that Silverthorne had no debt, entered into in 2009, gave  reasonably

expectation to SILVERTHORNE that she could rely on that to rent her unit without having her

tenant harassed , to rely on the income for her use, including school tuition  and to  induce

forbearance on the part of  SILVERTHORNE  not to sue to make the defendants here liable for

their actions. In addition she add and her  third party tenant relied on the arrangement to have a

peaceful landlord tenant relationship free of fear and aggravation; injustice could only be

avoided only by enforcement of the promise of LPR and its BOARD.

181 The plaintiff detrimentally relied on the promise made by the defendants,  by guaranteeing

her tenant quiet enjoyment of  lost tuition paid when she had to drop out of school and added to

time out of the work place.

182 Justice can only be served by requiring enforcement of the promise so SILVERTHORNE

can retake possession of her apartment. Silverthorne has suffered both general and special

damages as a result of LPR's and the BOARD's  breach its promise. Their breeches proximately

caused these damages, the loss of rent, reputation and other income, which they knew or should

have known would be the invariable result of the breaches. Their conduct was willful, intentional

and malicious, rising to the level of outrageous behavior.

183 *Wherefore*, Silverthorne requests this court to enjoin the defendants from continuing to not

allow SILVERTHORNE to access to the building for either her personal use or to rent the unit

and seeks general and specific damages from all defendants, plus costs, interest, any attorney's

fees ( as provided by §57.105, FLORIDA STATUTES, as applicable), and any further relief this

Court deems just and proper.

## COUNT XXII.

### VIOLATION OF THE FDCPA BY BLUE SKY AND MAXWELL SCHEINER

184 SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in

paragraphs 1- 66 with the same force and effect as herein set forth and further alleges:

185 SCHEINER owes and operates BLUE SKY. He is its sole decision maker and BLUE SKY

operates under his CAM license. There is a nexus between them SCHEINER is the cause of all

BLUE SKY actions.

185. SCHEINER and BLUE SKY entered into a contractual arrangement to have a separate fee

arrangement whereby when an amount due the association from its member base went into

default he would assume collection of the default debt and receive an amount over and above his

maintenance fees,due from the association when he collected it, late fees. This makes BLUE

SKY and SCHEINER both debt collectors under the statute. No vote was taken by the members

in agreement with this arrangement for BLUE SKY to receive these monies of the association.

186 SCHEINER collected for BLUE SKY in its name, sending company dunning emails and

putting postings on members doors on its and BLG behalf, in its name. Property managers in the

State of Florida are not exempt from licensing provisions for debt collectors; therefore, Scheiner

and Blue Sky were unlicensed debt collectors, a violation of FLORIDA STATUTE 559.53c, (2) and (5).

187 BLUE SKY and SCHEINER failed to disclose in their initial BLUE SKY communications, via email, that the debt collector was attempting to collect a debt and that any information obtained will be used for that purpose and that the communication is from a debt collector in violation of 15USC 1692e § 807 (11) and they also failed to do so after the fact was pointed out to them by SILVERTHORNE.

188 BLUE SKY and SCHEINER maintained the association web site and while acting as a debt collector not a manager communicated with third parties by broadcast email pointing to a debtor list to association members Silverthorne's name was on the list during the time she was disputing the debt without a notation to that effect. In violation of 15 US C 1692c §805 (b)

189 BLUE SKY and SCHEINER collected in tandem with BLG and LM Funding, participated and orchestrated the lock out of SILVERTHORNE prior to the LM FUNDING relationship and then aided it, and also told her tenant Diane Downs she was going to be foreclosed on by the association a violation of 15 USC 1692, further violating the FDPCA by:

i.using a false, deceptive, or misleading representation or means in connection with the collection of a debt : Alleging an unlawful debt and saying the July 1, 2010 revisions to the Condominium Act gave them the right to demand tenant's rent and evict him if he didn't pay.

ii. 15 USC 1692 (2) (a) and (b) The false representation of: the character, amount, or legal status of any debt, and the compensation which may be lawfully received by any debt collector for the collection of a debt, an as yet unknown portion of her tenant's rent, and by representing to the

third party tenant: SILVERTHORNE had a debt, when they knew there was no debt and by omitting to tell the tenant the unlawful debt was disputed and by representing they had lawful right to be compensated by SILVERTHORNE's rightful rent to get their late fee payments.

iii. 15 USC 1692 (4): The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action: They unlawfully ordered the demanding of SILVERTHORNE's lawful rent and represented to the tenant it was lawful to do so and threaten him with bodily eviction if he did not pay.

iv. 15 USC 1692(5): The threat to take any action that cannot legally be taken or that is not intended to be taken. BLUE SKY and SCHEINER represented to Silverthorne's tenant they were going to evict him if he did not pay.

v. 15 USC 1692 (7): The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer. BLUE SKY and SCHEINER represented through broadcast emails SILVERTHORNE was a debtor when she was not as a debtor when she was not.

vi. 15 USC 1692(8):Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. BLUE SKY AND SCHEINER communicate a false debt directly to Silverthorne's tenant and may be the party responsible for posting the BLG letter open faced on the door, broadcasting the debt to the building.

vii. 15 USC 1692(10):BLUE SKY AND SHEINER used false representations or deceptive means to collect or attempt to collect a debt by communicating an unlawful debt to third parties, SILVERTHORNE's tenant  when they knew the representations to be false. And finally: by participating in the threat and actual lock out of SILVERTHORNE and her tenant from the property not as an order from management but as an independent unlicensed debt collector.

vii. 15 USC 1692c (b) BLUE SKY and SCHEINER  had no prior consent when they directed communication with SILVERTHORNE's tenant and no legal right to do so with use of the new law 718.116(11) that did not apply to her. SCHEINER was a professional and knew: new provisions of the Condominium Act do not apply to existing Declarations; the rent appropriation law did not apply to her.

viii 15 USC 1692d (1).  Engaged in conduct the natural consequence of which was to harass, oppress, and abuse SILVERTHORNE in connection with the collection of a debt they knew to be unlawful by the use of illegitimate means to harm the property of SILVERTHORNE .

ix. 15USC 1692f (1) and (6) (a), (b), and (c). (1), implemented and directed the use of unfair practices and unconscionable means to collect for the collection of an amount not expressly authorized by the agreement (Declaration of Condominium), nor permitted by law, and by taking or threatening to take any non-judicial action to effect disablement or disposition of property because the law they cited as authorization did not apply to SILVERTHORNE and they knew it did not.

x 15 USC 1692 (g)(b)  SILVERTHORNE disputed both the nature  and amount of  debt  as well ability to use new provisions of the Condominium Act as a collection tool. BLUE SKY and

SCHEINER could have also directed a declaratory statement request to the state and they did not; therefore, they failed to properly and reasonably investigate the claim and continue with their actions

190 SILVERTHORNE has suffered actual, general and specific damages as a result of BLUE SKY's and SCHEINER's violations of the FDCPA. Defendant's violations of the act proximately caused these losses, which defendant knew or should have known would be the invariable result of its actions. DEFENDANT's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior and they conspired with others to do so.

191 *Wherefore*, SILVERTHORNE requests this court to enter judgment in her favor and seeks actual, general, statutory and special damages from defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT XXIII

### VIOLATION OF THE FCCPA BY BLUE SKY AND SCHEINER

192 SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 with the same force and effect as herein set forth and further alleges

193 BLUE SKY and SCHEINER published by email and caused to be posted before the general membership of both Associations a list of names alleged to be indebted to the association in association meetings and on association web sites, as well as sending broadcast emails directing the associations members where they could find the lists, in violation of FLORIDA STATUTE

559.72(14). 105 SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 with the same force and effect as herein set forth and further alleges:

194. Defendants BLUE SKY and SCHEINER operate under a professional state licensure and are trained that new provisions of the Condominium Act do not apply to existing declarations without amendment. The Defendants knew the debt was unlawful and knew the content of Silverthorne's condominium documents and lease. The defendants violated FLORIDA STATUTE 559.72(3) and (6), when disclose to SILVERTHORNE's tenants orally directly or indirectly information affecting SILVERTHORNES reputation for credit worthiness without also informing the debtor that the existence of the dispute would also be disclosed.

195. BLUE SKY and SCHEINER violated FLORIDA STATUTE 559.72(7) by willfully and repeatedly and continually communicating with the debtor and her tenants with such frequency as can be reasonably expected to harass the debtor or her tenants and they fully engaged in other conduct which can reasonably be expected to abuse and or harass the debtor or her tenants as follows:

(a) Caused to be communicating in writing to SILVERTHORNE and her tenant the demand to pay LPR rent or face tenant eviction.

(b) Conspired to lock tenant and SILVERTHORNE out her property.

196. BLUE SKY and SCHEINER may have violated FLORIDA STATUTE 559.72 (5) by causing to be disclose to SILVERTHORNE'S's tenants and anyone passing by her unit's doorways a disputed debt that was under agreement to be set aside effecting her reputation as an

individual and a Realtor, because it was a BLUE SKY employee who posted the note on Silverthorne's door.

197. BLUE SKY AND SCHEINER disclosed information concerning the existence of a debt, known to be reasonably disputed by the debtor, without disclosing that fact, thereby violating FLORIDA STAUTE 559.72 (6).

198. BLUE SKY AND SCHEINER repeatedly attempted and threatened to enforce a debt and then did enforce an unlawful debt by demanding her tenant's rent for LPR, which they benefited from, when they knew was not legitimate and that no the legal right to seize tenant's rent existed for SILVERTHORNE's condominium in violation of FLORIDA STATUTE 559.72(9).

199. SILVERTHORNE has suffered actual, general and specific damages as a result of the BLUE SKY and SCHEINER violations of the FCCPA. Defendant's violations of the act proximately caused these losses, which defendants knew or should have known would be the invariable result of their actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior and they conspired with others to do so

200 *Wherefore* , SILVERTHORNE requests this court to enter judgment in her favor and seeks actual, general, statutory and special damages from defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT XXIV

## VIOLATION OF THE FTCA BY BLUE SKY AND SCHEINER

201.  SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in

paragraphs 1- 66 with the same force and effect as herein set forth and further alleges:

202. Defendant BLUE SKY and SCHEINER  knew or should have known the debt was unlawful

and they knew the content of Silverthorne's condominium documents and leases.  Section 814 of

the FDCPA, 15 USC 1692 l states: " For purpose of the exercise by the Commission of its

functions and powers under the Federal Trade Commission Act [15 U.S.C. 41 et seq.], a

violation of this subchapter shall be deemed an unfair or deceptive act or practice in violation of

that Act, " and further states: "All of the functions and powers of the Commission under the

Federal Trade Commission Act are available to the Commission to enforce compliance by any

person with this subchapter, irrespective of whether that person is engaged in commerce or meets

any other jurisdictional tests in the Federal Trade Commission Act, including the power to

enforce the provisions of this subchapter in the same manner as if the violation had been a

violation of a Federal Trade Commission trade regulation rule. The court has the power to

enforce the provisions of the FDCPA in the same manner as if the violation had been a violation

of the Federal Trade Commission trade regulation rule; therefore any violation of the FDCPA

"shall be deemed an unfair or deceptive act or practice in violation of that act.15 USC 1692/ §

814 (a).

203. BLUE SKY and SCHEINER with intent, through the use of commerce in an immoral,

unethical, oppressive, unscrupulous way engaged in an inequitable assertion and illegitimate use

of its client's LPR power of governance, by utilizing a contractual agreement between the two, to

mislead SILVERTHORNE's tenant and deceived him into believing that their letter was a

legitimate and legal demand for his rent supported by Florida law and that he must surrender his

rent to LPR on their behalf.. Had SILVERTHORNE not been an expert in condominium law application it would have deceive her. These unfair and deceptive acts caused substantial damages to SILVERTHORNE including loss of income and reputation. Its misrepresentation was material and it was reasonable for SILVERTHORNE's tenant to believe the machinations.

204. SILVERTHORNE lost the use of her property and had liens placed without notice on her property which were no removed in accordance with the Condominium Acts provisions and the rapid appreciation of rents that occurred during the depravation of her rightful rent. BLG sold its services to undertake the illegal actions to LM Funding LPR with mutual knowledge and consent. The scenario tenant was faced with had the tendency, capacity and likelihood to deceive was unfair and therefore violated Section 5 of the FTCA 15 USC 45 9a) (1). Any and all violations of the FDCPA is equal a violation of the FTCA

205. SILVERTHORNE has suffered actual, general and specific damages as a result of BLG's violations of the FTCA. Defendant's violations of the act proximately caused these losses, which defendant knew or should have known would be the invariable result of their actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior and they conspired with others to do so.

206. *Wherefore* , SILVERTHORNE requests this court to enter judgment in her favor and seeks actual, general, statutory and special damages from defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT XXV

## VIOLATION OF THE FDUTPA BY BLUE SKY AND SCHEINER

207. SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 as well as paragraph 202-205 with the same force and effect as herein set forth and further alleges:

208. Violations of the FTCA constitute per se violations of the FDUTPA F.S. §501.201, per § 501.204, unlawful acts and practices, and if they occur in more than one circuit court area which this did, regulatory authority is the Attorney General of Florida.

209. SILVERTHORNE is a senior citizen as defined by the statute and has suffered actual, general and specific damages as a result of the BLUE SKY and SCHEINER's violations of the FDUTPA. Defendant's' violations of the act proximately caused these losses, which defendant knew or should have known would be the invariable result of their actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior.

210. *Wherefore*, SILVERTHORNE requests this court to enter judgment in her favor and then refer the matter to the Florida Attorney General. SILVERTHORNE seeks actual, general, statutory and special damages trebled, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status (under §57.105, FLORIDA STATUTES, as applicable, and any other relief this Court deems just and proper.

## COUNT XI

**VIOLATION OF SILVERTHORNE'S CIVIL RIGHTS PROVIDED BY THE US.**

**CONSITUTION'S FOURTH, NINETH AND FOURTEETH AMENDMENT UNDER**

**COLOR OF LAW PURSUANT TO 42 USC 1983  AND THEREFORE ARTCLE I**

**SECTION2, 9,10,12  AND 23 OF THE FLORIDA CONSTUTION BY BLUE SKY AND**

**SCHEINER**

211. SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1- 66 and  with the same force and effect as herein set forth and further alleges:

212 Defendant BLUE SKY AND SCHEINER knew the debt was unlawful.  Defendants knew the content of SILVERTHORNE's condominium documents and lease; therefore, by implementing collections and then aiding and acting in concert with BLG they:

213. caused to be publicized in a wide spread manner, on more than one occasion a matter concerning the private life of SILVERTHORNE to a third party, her tenant and the visitors, owners and tenants living in LPR, and therefore, any others they transmitted knowledge of the content of the letter to, a letter which knowing used a false representation that SILVERTHORNE had a debt

ii) Falsely represented that they had the right to collect it for LPR by demanding her tenant's rent when they knew no such remedy existed in the law and said debt was unlawful because the special assessments were done unlawfully, and LPR had therefore agreed with SILVERTHORNE: there was no debt. Additionally, the rent demand authorized by the new section 718 provision of the Condominium Act did not apply to existing condominiums and

iii) its actions caused and extended to the lock out of a third party tenant-- and even SILVERTHORNE herself -- in order to effectuate the delivery of the proceeds of the tenant's rent and deprive her of liberty, due process and rights to her property's income

214. These actions presented Silverthorne in a false light to her tenant and neighbors and visitors to her building which any reasonable person would find offensive and unreasonable. The dispute was not a matter of legitimate concern to the public including the residents, owners, tenants and visitors that passed by SILVERTHORNE's door or received knowledge of the posting from others, because it was an unlawful action: the seizure of SILVERTHORNE rightful use of her property and therefore of no concern to them.

215 SILVERTHORNE suffered damages as a direct result of the letters mailed and posted open faced on her door and by losing rent that rightfully belong to her, the ability to pay regular maintenance, maintain her personal expenses, embarrassment, loss of reputation and potential professional real estate income and being unable to continuously pursue her education in a timely fashion.

216 The State of Florida was in general made aware of the widespread, statewide misuse of a new provision of the state's Condominium Act by major Florida media stories, and in Silverthorne's case was made specifically and directly aware of the deprivation of her rights by her -no less than four - complaints to the state's Division of Condominiums and one to its Financial Regulatory Division, submitted twice, once for BLG and BLUE SKY and once for LM FUNDING. All of the States decisions not to enforce were sent to the Association as well as SILVERTHORNE. The State took no enforcement action at all, and other measures to 'educate" the association of wrongdoing when they already knew they were doing wrong, while

simultaneously telling LPR they did not intend to do anything about their conduct, was inadequate and inappropriate action to prevent the proximate cause of the clear, on-going depravation of SILVERTHORNE's civil rights.

217 Under color of authority is a" legal phrase" used in the United States indicating a person is claiming or implying the acts he or she is committing are related to and legitimized by his or her role as an agent of governmental power, especially if the acts are unlawful." The FBI's website makes it clear that deprivation of civil rights extends beyond government officials to persons who are bound by laws, statutes, ordinances, or customs. LPR and its BOARD are wholly bound by Florida Statute 718 relevant vintage in their governance of LPR and its members. BLUE and SCHEINER are equally bound through contractual arrangements with LPR and through Fla. Stat 468 which regulates BLUE SKY and SCHEINIER is as well.

219. Therefore, BLUE SKY and SCHEINER by and through its contractual relationship with LPR became part of a 'state actor' rent-grabbing -team. The U.S. Supreme Court has found that private parties become state actors when one or more of four factors are present:

i. A public function test is met for state actor when a private entity exercises "` powers traditionally exclusively reserved to the State **or** if its actions may be "fairly attributable to the State." The taking of property is a function reserved for the adjudication of the Courts up until the time that the law's revision to the Condominium Act was passed, and as it did not apply retroactively to condominiums without amendment to their declarations, in this case, it remained a public function. The State's repeated refusal to enforce its own law and their action in alerting the parties involved on the rent-grabbing team that they were free to trample Silverthorne's civil rights, without their interference, gives plausible, reasonable and proximate cause to say that the

actions of this Defendant can be fairly attributable to the State's broadcasted policy of inaction. BLUE SKY and SCHEINER, therefore, by its actions and through its employment of BLG to collect a debt of LPR, a debt they knew to be unlawful, caused, interfered and replaced itself with a normally State function and denied SILVERTHORNE access to the courts and due process. The State acted to adopt a policy of inaction by the State in enforcing its law generally State wide and specifically here  because after Silverthorne's  multiple requests for their intervention, it can "fairly" be ascertained to be "attributable" directly to the State's  enforcement inaction and the act of refusing to enforce and sending the alternative education letter.

ii To demonstrate state action under the state compulsion **test**, SILVERTHORNE is required to show that the state exercised such coercive power or provided such significant encouragement, either overt or covert, that the choice of the Defendant must in law be deemed to be that of a State's Actor. Here based on the State's general (covert) silence on a matter well reported by major media, without comment on the non-retroactive status of its law, and therefore, its inapplicability to any condo then existing in the State of Florida, compounded by its overt encouragement by broadcasting in its letters to LPR sending them to BLUE SKY's office that it would not enforce its own law, the Defendants, BLUE SKY and SCHEINER became a 'State Actor.' The Division of Condominium acted to give clear, significant encouragement of promised withdrawal of enforcement inaction on four occasions.   The State acted to withdraw its jurisdiction over the statute coincident to the foreclosure crisis and the impending perceived doom of many entities that would become the charge of the State. Survival became a shared goal of the associations and the State and fundamental freedoms of a large class of citizens were subverted

iii The circumstances here pass the symbiotic relationship or **nexus test**. There was a sufficiently close **nexus** between the state and the challenged action because LPR was a wholly regulated entity; therefore, SILVERTHORNE's argues, LPR illegal actions became the State's illegal actions because the State was given the opportunity four times to correct the wrongful actions of its charge and the State not only chose not to but had on October 1, 2008 adopted a policy that deliberately withdrew the Divisions jurisdiction over that matter. The State acted to adopt a policy of inaction; it significantly aided and abetted BLG's actions in collecting efforts on an unlawful debt for LPR; its actions therefore may properly be characterized as "state action" as a member of the rent-grabbing team

vi The State became entwined with the actions of the Defendant LPR, because they knew of the serious deprivation of SILVERTHORNE's rights and did not chose to enforce the violations of LPR and to tell the team they were not pursuing them.

220. BLUE SKY and SCHEINER in their capacity as a State Actor deprived SILVERTHORNE of her constitutional due process rights under the U.S. Constitution's Fourteenth Amendment's due process provisions and the Fourth Amendment's prohibition against illegal seizure. It deprived her third party tenant as well, by participating in rent-grabbing activities that included lock out from the property, making SILVERTHORNE insecure in her ability to offer a secure premise to the renting public, and BLUE SKY and SCHEINER deprived SILVERTHORNE with loss of the benefit and control of her property, rental income and the ability to rent the apartment property as a result of an established state procedure that itself violates due process rights. The defendants interfered with SILVERTHORNE's possessory interest in and dominion over her

property and the lock out left her insecure in her possession of it and its ability to provide her with income free of a potential liability to her tenant for their safety.

221. Because the defendants became state actors; therefore, they violated SILVERTHORNES's rights under the Florida Constitution Article I, Bill of Rights, 2,9,10,12 as well as her' Right to Privacy' under the Florida Constitution's Article I, Bill of Rights, Section 23, when they may have caused to be posted an open face a letter from BLG on SILVERTHORNE'S's door. SILVERTHORNE's tenant did not receive a subsequent letter in the mail.

222. SILVERTHORNE extends her claim to a the defendant's violation of Silverthorne's privacy rights under the Ninth Amendment of the US Constitution .

223. SILVERTHORNE has suffered actual, general and specific damages as a result of the Defendant violations of her civil rights. Defendant's violations proximately caused these losses, which defendant knew or should have known would be the invariable result of its actions. Defendant's conduct was fraudulent willful, and intentional, malicious, persistent and repeated, rising to the level of outrageous behavior which includes their conspiring with others.

224. *Wherefore* , SILVERTHORNE requests this court to enter judgment in her favor and seeks actual, general, statutory and special damages from defendant, plus costs, interest, and any attorney's fees commiserate with the Court's judgment of her Pro Se status( under §57.105, FLORIDA STATUTES, as applicable) , and any other relief this Court deems just and proper.

## COUNT XXVI

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY AGAINST SCHEINER AND BLUE SKY MIAMI

225.  SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1-66 and  163-170 above with the same force and effect as herein set forth and further alleges:

226. FLORIDA STATUTE 718.111(1) (a), provides for a fiduciary relationship between a condominium association Board of Directors and its unit owners  and it also provides: "It is the intent of the legislature that nothing in this paragraph shall be construed as providing for or removing a requirement of a fiduciary relationship between it and the manager employed by the association and the unit owners."

227. FLORIDA STATUTE 468.431(1) and (2)states that community association management " means any of the following practices requiring substantial specialized knowledge, judgment, and managerial skill when done for remuneration and when the association or associations served contain more than 10 units or have an annual budget or budgets in excess of $100,000: controlling or disbursing funds of a community association, preparing budgets or other financial documents for a community association, assisting in the noticing or conduct of community association meetings, and coordinating maintenance for the residential development and other day-to-day services involved with the operation of a community association."

228. SCHEINER is a professional Community Association Manager, license under FLORIDA STATUTE 468.431.

229. BLUE SKY operates under SCHEINERS' license.

230. SCHEINER and BLUE SKY at all times maliciously, intentionally, knowingly – and without justification, aided and abetted LPR's  breaches of their fiduciary duty to

SILVERTHONE for the purpose of self-enrichment, by colluding with LPR rather than point them to their knowledge of the non-applicability on new provisions to old un-amended documents: As professionals, they knew better instead they colluded with LPR and

(a) Denied approval for Silverthorne's tenant's at LPR.

(b) May have posted open faced notices from debt collectors on Silverthorne's unit, stating she had a debt that was in dispute, operating as an unlicensed debt collector under FLORIDA STATUTE 559. 55 on behalf of the associations, while so doing.

(c) Sent out repeated emails to collect a false debt.

(d) Refused to give Silverthorne new bylaws without a written request, ignoring Silverthorne's subsequent written request.

(e) Assisted in the assignment of Silverthorne's false debt to a third party.

(f) locked first tenant and then SILVERTHORNE out of her premise.

(g) use false premises to obtain money from SILVERTHORNE's TENANT

(h) damaged SILVERTHORNE's reputation in association meetings and broadcast emails

231. SCHEINER and BLUE SKY's malicious actions (for the purpose of their own self-enrichment), proximately caused general and special damages to SILVERTHORNE.

232 *Wherefore*, Silverthorne requests this court to enter judgment in her favor and seeks general and specific damages from all defendants, plus costs, interest, any attorney's fees ( as

provided by §57.105, FLORIDA STATUTES, as applicable), and any further relief this Court deems just and proper.

## COUNT XXVII.

**TORTIOUS INTEFERENCE Of CONTRACT AND BUSINESS RELATIONSHIPS-AGAINST Y E A M AN BLUE SKY MIAMI,  BLG, DINICOLA, DESORBO, LPR,  L M F U N D I N G AND  SCHEINER**

Silverthorne repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 66 above with the same force and effect as herein set forth.

233.  A business relationship existed through leases between Silverthorne and her tenants at LPR,  Diane Downs and Phil Keating.

234 .  All Defendants knew that Silverthorne had a contract with Keating (By statute 718, the association approves all lease and has copies),and they had no prior permission on file to take tenant's rent in case of Silverthorne's default. LPR , BLUE SKY and SCHEINER knew she had a lease with Diane Downs.

235. All Defendants knew the new law did not apply to existing condominium documents and maliciously, intentionally and without justification acted in concert  to interfere with Silverthorne's contracts with her tenants. The Division of Business and Professional Regulation provides the SILVERTHORNE's contract with her tenants.  LPR, BLUE SKY, THE BOARD and SCHEINER interfered with both tenants, Downs and Keating, and all of the Defendant's interfered with Phil Keating.

ability to seek a Declaratory Statement before any Condominium Board takes actions, and no declaratory statement was sought on this issue by any defendant.

236. The Defendants all interfered by trying to trick tenants into believing that they had a right under a new July 1, 2010 law that changed the Condominium Act to provide for it.

237. The new law itself when it does apply to a condominium does not provide for this action if the debt is in dispute.

238. The Defendants, for the sake of their own enrichment, maliciously interfered with

239 . All defendants maliciously, intentionally and without justification interfered with Silverthorne's contract with her tenant, causing her to lose a tenant and to lose rent.

240. All defendants interfered by using a pretence that they had a right to a remedy they did not possess and by not alerting the tenant to the actual controversy with regard to the debt dispute that did exist.

241. All defendants, for the sake of their own enrichment, maliciously induced SILVERTHORNE's tenant or tenants to breach the lease contract with SILVERTHORNE. And by demanding tenants rent when they knew they did not have the legal right to do they violated FLORIDA STATUTE 83.43, 44 by acting as the landlord in an unconscionable manner when they absolutely no right at all to do so.

242 The malicious actions of all Defendants (for the purpose of their own self-enrichment), proximately caused general and special damages to SILVERTHORNE.

243.*Wherefore*, Silverthorne requests this court to enter judgment in her favor and seeks general and specific damages from all Defendants, plus costs, interest, any attorney's fees ( as provided

by §57.105, FLORIDA STATUTES, as applicable), and any further relief this Court deems just and proper

## COUNT XXVIII

## TORTIOUS INTERFERENCE OF BUSINESS RELATIONSHIP- AGAINST LPR, YEAMAN SCHEINER. DINICOLA, DESORBO AND BLUE SKY

244. Silverthorne repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 -66 with the same force and effect as herein set forth and further alleges.

245. Silverthorne was the broker of record on the conversion sell out LPR buildings and had a thriving business of repeat and referral customers for her company NewStar. She has specific names and evidence of contracts which she will produce. The customers lived or invested in the building and were a repeat and continuing source of on-going revenue for her. Repeat and referral business is the main revenue growth source of the real estate business

246. After her false and illegitimate debt was first disclosed , running from the February 2008 on NewStar never received another referral of a buyer or a listing contract.

247. Defendants knew of SILVERTHORNE's vibrant business because they all bought their units from her during the two years she lived and operated an office on the ground floor lobby in the building and also knew of the existence of the on-going business relationships between unit owners and SILVERTHONE, because when a unit was sold or leased it went through the management office of BLUE SKY for approval by the BOARD. The Realtors name is on the contract.

248. SCHEINER was a competing real estate broker.

249. Defendants knew or could have foreseen that broadcast of SILVERTHORNE's debt and not disclosing the nature of the dispute would damage NewStar and SILVERTHORNE's reputation, especially given they knew the assessments did not apply due to wrongful voting procedures

250. All Defendants' actions were intentional and unjustified interference with the relationship for the purpose of avoidance of telling the rest of the unit owners of their deception, and in the case of SCHEINER, for his own possible self-enrichment, he stood to benefit from the demise of Silverthorne's personal reputation.

251 All Defendants' actions were intentional and unjustified interference with the relationship for the purpose of unjust enrichment.  Silverthorne has been damaged as a result of the Defendants' tortious interference with the business relationships. The defendants proximately caused specific and general damages to Silverthorne

252 *Wherefore*, Silverthorne requests this  court to enter judgment in her favor and seeks general and specific damages from all Defendants, plus costs, interest, any attorney's fees ( as provided by §57.105, FLORIDA STATUTES, as applicable), and any further relief this Court deems just and proper.

## COUNT XXIX

### CONSPIRACY TO COMMIT FRAUD AGAINST ALL DEFENDANTS

253. SILVERTHORNE repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 -66 with the same force and effect as herein set forth and further alleges.

254 By May 28, 2010 all defendant's had been told by SILVERTHORNE and aware of the material fact: the debt was false because it revolved around assessments turned back to the association due to illegal procedures Assessments were not done in accordance with the association's documents because SILVERTHORNE told all of them: no new provisions apply to existing condominium documents unless amended by the membership.

255 All defendants knew they had the ability to request a Declaratory Statement from the State and they knew the law was changing.

256. All Defendant's planned for the illegal rent demand in anticipation of the law change  by first placing a lien without notice in February 2010; then all defendants took steps to fraudulent extort  SILVERTHORNE's  rent from her tenant,  first by sending a demand letter to Silverthorne in May 2010, then by demanding her tenant's rent in a mailed letter on July 16, 2010, and then by threatening to lock the tenant out of the building and the park lot with new electronic devices if he did not surrender rent on December 29, 2010, and finally by posting the letter from BLG on the door of the unit on January 5, 2011 and on January 11 by giving the tenant a copy of a note from SCHEINER to his employee stating that the fobs were to be turned of again on February 15, 2011 if he did not pay them again.

257. It was the intent of the parties to deceive the tenant with the use of the authority of a real law of the State of Florida, by delivering the demand it from a license Florida attorney.

258. The tenant told SILVERHORNE it "looked legal" to him because it was justifiably a Florida law and a Florida attorney said it gave the association the right to make him pay them not SILVERTHORNE. He relied on it to pay LPR not Silverthorne.

259 SILVERHORNE was the victim of the fraud; she was injured by depravation of her rightful rent.

260 The planning to continue the fraud materialized when the association allowed her to offer the apartment for rent, accepting SILVERTHORNE's offer to let them keep the rent and not admit to debt; they would take all rent deduct the monthly maintenance and return the balance to SILVERTHORNE if she prevailed in court. LPR reneged after a contract to lease was obtained in April 2011, when SILVERTHORNE, as agreed, denied the debt and BLG sent a letter to SILVERTHORNE demanding the full amount.

261. ON May 28 2011 SILVERTHORNR sent them irrefutable evidence, case law citations confirming that there was a constitutional prohibition in the state and the nation against applying new sections of 718 laws to old condominium documents for both method of assessing and every other item, Florida Supreme Court law reconfirmed this in Mar, 2011, in a case where the legislature tried to legislate a retroactive law and had it over turned.

262 In January 2011, October 2011 and January 2012 , the State of Florida told the defendants that their use of electronic devices to lock people out of their homes violated Chapter 718. SILVERTHORNE told them it violated their civil rights.

263 SILVERTHONE was again the victim; she has been fraudulently deprived of rent for more than two years either from the unit or by allowing her to move in; they continue their deception planning as a group by filing liens yearly and denying SILVERTHORNE access to her unit by electronic lock out and threat to tow her car, still pretending that the law applies and still pretending they can enforce assessments done without a majority vote of the members. S259

264. All defendants have willfully with intent to deceive continuously planned and conspired to defraud SILVERTHORNE of her rent or ability to live in her apartment as well as maintained a record of fraudulent debt maliciously, intentionally, knowingly – and without justification, for three years.

265. *Wherefore*, Silverthorne requests this court to enter judgment in her favor and seeks general and specific damages from all Defendants, plus costs, interest, any attorney's fees ( as provided by §57.105, FLORIDA STATUTES, as applicable), and any further relief this Court deems just and proper.

## COUNT XXX

### CIVIL RICO CONSPIRACY 18 USC 1961-1964(a) (c)(d)

266 Silverthorne repeats and re-alleges and incorporates by reference the allegations in paragraphs 1 -66 and 254-2654 with the same force and effect as herein set forth and further alleges.

267 All Defendants meet the definition of a person under 18 USC 1961(3) and conducted racketeering activity in violation of 18 USC §1961(1). SILVERTHORNE meets the definition of a person who has been injured in her business and property by the conduct of the Defendants in violation of RICO under the definition of this section as well.

268 Each and every one of the Defendants owned and operated or managed a separate enterprise and invested the proceeds of the activity of the scheme back into their businesses in violation of 18 USC 1962(a)

269 Each and every one of the Defendants conspired to form a separate "association in fact" enterprise the purpose of which was to collect a fraudulent debt by fraudulent means by devising a scheme to obtain money and property from SILVERTHORNE by means of fraudulent collection of a debt by fraudulent means, the use of an inapplicable state law, to maintain control over their enterprise and profit from the racketeering and unlawful debt collection effecting interstate commerce in violation of 18 USC 1961(4)

270 The "association in fact" conspired over a long period of time beginning in February 2010 and continuing to the present time., to knowingly, willfully and maliciously devise a scheme and artifice to defraud SILVERTHORNE and her tenant's through numerous false and fraudulent pretenses and representations using the United States Mail, the Internet and in the case of the tenant, Phil Keating, a FOX News correspondent, the telephone for the purpose of executing the scheme in violation of 18 USC § § 1341, 1343 and the same methods of commissio to collect a fraudulent debt with a fraudulent use of a state law, which in turn constitutes "racketeering activity as the term is defined in 18 USC 1961(1). Each such act had a similar purpose, involved the same participants and the same results constituting a pattern of racketeering activity impacting SILVETHORNE

271 LM FUNDING conceived the operation and operated in in concert with all other defendants who executed their plan willfully with the intent to defraud. And they engaged in the pattern of acts in furtherance of and for the purpose of furthering the scheme.

272. Each and every one of the defendants conspired to conceal the scheme with the use of an inapplicable State of Florida law effecting interstate commerce in a long term pattern of ongoing actions for more than two years.

273 Defendants were employed by or associated with the enterprise and all defendants conspied conducted or participated in directly or indirectly in the conduct of the enterprises affairs through a pattern of racketeering activities as described in the statement of facts and SILVERTHORNE's claim for conspiracy to commit fraud

274. Defendants conspired by agreeing to commit and personally did commit numerous illegal rackeetering acts conducting and furthering the affairs of the enterprise with the pattern of activity described above

"It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt…"in violation of 18 USC 1962(c) and "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a) of the sections.

275 As a direct and proximate result of Defendants violations of 18 USC 1961-1964 sections described above SILVERTHORNE has been injured in her business and property through lost income of more than $30,000.00. Under 18 USC §1964 SILVERTHORNE is entitled to bring this action to recover herein treble damages and the cost of bring the law suit, including attorney's fees.

*276 Wherefore*, Silverthorne requests this court to enter judgment in her favor and seeks general and specific damages from all Defendants, plus costs, interest, any attorney's fees ( as provided by §57.105, FLORIDA STATUTES, as applicable), and any further relief this Court deems just and proper.

# XXXI

## JURY TRIAL DEMAND

277 Pursuant to Federal Rule of Civil Procedure 38, and Civil Local Rule 1.430,

SILVERTHORNE demands a jury trial on all issues so triable.

# XXXII

## PUNITIVE DAMAGES

278. Silverthorne requests that punitive damages be assessed on all counts where they are

allowed for the Defendants knowing willful, malicious and reprehensible conduct and to allocate

them along with actual damages to be enumerated by Plaintiff and given to the Court by

SILVERTHORNE malicious and reprehensible conduct.

# XXXIII

## DECLARATORY JUDGMENT

279 CANADIAN CITIZENSHIP RIGHTS

An actual, present and justiciable controversy has arisen because SILVERTHORNE has dual

American Canadian citizenship under the 1899 Treaty Between Great Britain and The United

States, Concerning Disposition and Tenure of Real and Personal property, acceded to by Canada

in 1921.

It is clear from the one Supreme Court case that a Canadian Citizen has rights under the Treaty to

cover property owned in America beginning with the year 1921.

SILVERTHORNE knows by personal experience: an American is cover by it for property owed in Canada; therefore, it can be adduced that a dual citizen when it comes to a 'Treaty" would have the right to plead the laws of both counties in tandem.

SILVERTHORNE's focus of this case is the Defendants' sucker punch to the US Constitution.

SILVERTHORNE's Canadian Charter of Rights and Freedoms as well as Canadian laws concerning real and personal property have been violated as well.

SILVERTHORNE asks for a Declaratory Judgment stating that she may amend the suit to add violation of her Canadian rights, freedoms and property laws or to declare any other rights of election she may have under the Treaty's Article V (*Sullivan et al. v. Kidd. No 65).*

*280 Wherefore,* Silverthorne respectfully requests that this court enter judgment according to the declaratory relief sought

This amended complaint is:

Respectfully submitted this 11 day of February, 2012.

Andrea k. Silverthorne

Mailing address: 1610 Lenox Ave 506, Miami Beach Florida, 33139

Phone 305-684-5560

Email andthorne@aol.com

## CERTIFICATE OF SERVICE

*Feb 11*

**I HEREBY CERTIFY** that on ~~January 10, 2013~~, I served a true copy of the foregoing on the Service List below by email.

Andrea Silverthorne

1610 Lenox Ave, Miami Beach Florida, 33139

International magic jack number 786 4622551

andthorne@aol.com

**SERVICE LIST**

**Steven M. Davis**
Becker & Poliakoff, PA
121 Alhambra Towers
10th Floor
Coral Gables, FL 33134
305-262-4433
Fax: 442-2232
Email: sdavis@becker-poliakoff.com

**Aaron Swimmer**

Swimmer Law Associates
1680 Michigan Avenue
Suite 1014
Miami Beach, FL 33139
305-535-0808
Fax: 305-397-8220
Email: als@SwimmerLawAssociates.com

**Scott Chapman Davis**
Business Law Group, P.A.
301 W. Platt St
Suite 375
Tampa, FL 33606
(813) 379-3804
Fax: (813) 221-7909
Email: sdavis@blawgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aaron Lee Gordon**
LM Funding, LLC
320 W. Kennedy Blvd
Suite 400
Tampa, FL 33606
(813) 222-8996
Fax: (813) 253-3820
Email: AGordon@LMFunding.com